## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| *Petitioner,* | ) ) | |
| v. | ) ) | Misc. No. 25-mc-322-CFC |
| DELAWARE DEPARTMENT OF LABOR, | ) ) | |
| *Respondent.* | ) ) ) | |

## DELAWARE DEPARTMENT OF LABOR'S CORRECTED RESPONSE TO THE UNITED STATES' PETITION TO ENFORCE DEPARTMENT OF HOMELAND SECURITY <u>ADMINISTRATIVE SUBPOENA</u>

DELAWARE DEPARTMENT OF JUSTICE

Jennifer Kate Aaronson (DE Bar No. 3478)
Ian R. Liston (DE Bar No. 5507)

*Counsel for Delaware Department of Labor*

Dated: October 2, 2025

**<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ...............................................................................................1

II.  BACKGROUND ...............................................................................................4

     A.   Confidentiality is the Linchpin of the Joint Federal-State UC Program Created by the Social Security Act of 1935 ...........................................4

     B.   Administrative Subpoenas Issued to the DDOL/UI ...........................9

III. LEGAL STANDARD.......................................................................................12

IV.  THE ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED....13

V.   THE GOVERNMENTS FAILS TO DEMONSTRATE THE RELEVANCY OF THE SUBPOENAED WAGE REPORTS .......................................................16

     A.   The Government Fails to Demonstrate the Wage Reports Are Reasonably Relevant to Any Lawful Investigation............................16

     B.   The Administrative Subpoena is Unreasonable: The Demand is Too Indefinite, Overbroad and Unduly Burdensome. ................................19

VI.  THE SUBPOENA WAS ISSUED FOR AN IMPROPER PURPOSE AND IS UNENFORCEABLE........................................................................................31

VII. CONCLUSION ...............................................................................................33

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Berg v. Shearer*, 755 F.2d 1343 (8th Cir. 1985) …………………………….…………4

*Brennan v. Owensboro-Daviess C. Hosp., etc.* 523 F.2d 1013 (6th Cir. 1975) …4, 21

*Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887 (6th Cir. 2019) ………………………..4

*California Department of Human Resources Development v. Java*, 402 U.S. 121  (1971)……………………………………………………………24

*Cosby v. Ward*, 843 F.2d 967 (7th Cir. 1988)……………………………...........27

*Doe v. United States*, 253 F.3d 256 (2001)……………………………..………….12

*EEOC v. Shell Oil, Co.,* 466 U.S. 54 (1984) ……………………….…………16, 19

*EEOC v. Schuff Steel Co.*, 2023 WL 4758614 (D. Ariz., 2023)……………………28

*EEOC v. United Air Lines, Inc.,* 287 F.3d 643, (7th Cir. 2002) ………………16, 19

*EEOC v. Franklin & Marshall Coll.,* 775 F.2d 110 (3d Cir.1985) ………………..15

*EEOC v. S. Farm Bureau Cas. Ins. Co.,* 271 F.3d 209 (5th Cir. 2001)……………16

*Fusari v. Steinberg,* 419 U.S. 379 (1975)……………………………………....24

*Gann v. Richardson*, 43 F.Supp. 896 (S.D. Ind. D.Ct. 2014)………………………27

*In re Administrative Subpoena*, 2025 WL 2607784, *Mem. Op.*, (Sept. 9, 2025)…………………………………………………………………..2

*In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973)…………………..……13

*In re Sealed Case (Admin. Subpoena),* 42 F.3d 1412 (D.C. Cir. 1994)............*14, 22*

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000)……………………..22

*Jersey v. Corrigan*, 347 F.3d 57 (3d Cir. 2003)…………..………………..…...3, 12

*McLane v. EEOC,* 137 S. Ct. 1159 (2017). …………….………………….12, 17

*New York Tel. Co. v. New York State Dep't of Lab.*, 440 U.S. (1979)………………27

*Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. at 188 (1946) …….……….13, 17

*Peters v. U.S.*, 853 F.2d 692 (9th Cir. 1996)………...…………………………..14

*Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946)
………………………….….12
*Refugee and Immigrant Center for Education and Legal Services, et al.
v. Kristi Noem*, 2025 WL 1825431(D.C. D. Ct., July 2, 2025)...………….2

*Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979)……………………………………..4

*Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d
118 (3d Cir. 1981)…………..……………………………………….30, 31

*SEC v. Wheeling-Pittsburgh*, 648 A.2d at 126…………………………………..29

*U.S. v. Morton Salt Co.,* 338 U.S. 632 (1950) …………………….………..12, 19

*United States v. Freedom Church*, 613 F.2d 316, 321-22 (1st Cir. 1979)…………21

*United States v. Goldman*, 637 F.2d 664 (9th Cir. 1980)…………………………..18

*United States v. Westinghouse Elec. Corp.*, 788 F.2d 164 (3d Cir. 1986)…30, 31, 32

*United States v. Freedom Church*, 613 F.2d 316 (1st Cir. 1979)……….………….20

*United States v. Joint Active Sys., Inc.*, 2020 WL 9747630,
(D. Mass. May 20, 2020)……..…………………………………………...22

*United States v. Powell*, 379 U.S. 48 (1964)………………………….…..13, 31

*United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973)…….………………..22

iv

*United States v. Salter*, 432 F.2d 697 (1st Cir. 1970)……………………………….32

*United States v. Westinghouse Elec. Corp.*, 788 F.2d 164 (3d Cir. 1986)………...21

**STATUTES**

8 U.S.C. § 1225……………………………………………..……..……. *passim*

8 U.S.C. § 1225(a)……………………………………………..……..……14

8 U.S.C. § 1225(d)(4)(A)……………………………………..……..……15

8 U.S.C. § 1225(d)(4)(B) ……………………………………..……..……12

8 U.S.C. §1324a(a)(1)………………………………………………..……15

26 U.S.C. § 3301 ……………………………………………………….....4

26 U.S.C. § 3304……………………………………………………....4, 24

26 U.S.C. §7609………………………………………………………..... 14

42 U.S.C. § 501 et seq., § 1101 ………………………………………...4

42 U.S.C. §503 ……………………………………………..……….*passim*

42 U.S.C. §503(a)(1)…………………………………… 5, 7, 19, 23,  28

42 U.S.C. §503(a)(8)……………………………………………….....5, 7

19 *Del. C.* §3125……………………………………………………….7, 27

19 *Del C.* §3125(a)(4)…………………………………………..... 9 21, 24

19 *Del. C.* §3125(d)………………………...…………………………….21

19 *Del. C.* §3161……………………………………………………...6

19 *Del. C.* §3301, *et seq.* …………………………………………….6

**REGULATIONS**

20 C.F.R. §603…………………...……...………………….…………………..5, 21, 23

20 C.F.R. §603.3…………………………………………..….……………...…..9

20 C.F.R. §603.4(b) ………………………………………………….…………7

20 C.F.R. §603.4(c) …………………………………………………… *26, 27, 28*

20 C.F.R. § 603.5……………………………………………………..….…3, 8

20 C.F.R. § 603.5(a)…………………………………………..………3, 8, 24, 25

20 C.F.R. § 603.5(e) ……………………………………….…………….8, 24

20 C.F.R. § 603.5(h)……………………………………...…………….........8, 25

20 C.F.R. §603.6(a)……………………………………………..…….……..7, 29

20 C.F.R. § 603.7 ………………………………………...…………...…….7, 24

20 C.F.R. § 603.7(b)(1) ……………………………………………...…….…25

20 C.F.R. § 603.9……………………………………………...…………….……....9

12 *Del. Admin. C.* §12.0 ………………………..….………………………1

19 *Del. Admin. C.* § 1201 …………………………………………….…..5

19 *Del. Admin. C.* §12.5……………………………………...…….……. 9, 26, 27

Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, 90 Fed. Reg. 8333 (Jan. 20, 2025)...………….....……………….24, 6

**U.S. CONSTITUTION**

Art. VI, § 2, cl. 2……………………………………………...……..27

**OTHER AUTHORITIES**

U.S. Department of Labor, Employment Training Administration,

*Unemployment Insurance Program Letter No. 34-97*
https://www.dol.gov/agencies/eta/advisories/unemployment-
insurance-program-letter-no-34-97……………………………5, 6, 7, 23

U. S. Department of Labor, Employment and Training Administration,
    *Federal-State Unemployment Compensation Program;*
    *Confidentiality and Disclosure of State UC Information,*
    71 Fed. Reg. 56830 (Sept. 27, 2006) …………………………….6, 7, 26

U. S. Department of Labor, Employment and Training Administration,
    *Federal-State Unemployment Compensation Program;*
    *Confidentiality and Disclosure of State UC Information,*
    69 Fed. Reg. 50,022 (August 12, 200)……………………….6, 25, 26

U.S. Department of Labor, Employment and Training Administration,
    *Federal-State Unemployment Compensation (UC) Program;*
    *Data Availability*, 90 Fed. Reg. 42,143 (August 29, 2025)……………..31

## I. INTRODUCTION

Nothing about the Department of Homeland Security's ("DHS") Administrative Subpoena is "ordinary."[1] The Delaware Department of Labor ("DDOL") has and will continue to respond to "ordinary" administrative subpoenas that, for example, based on individualized suspicion, request unemployment compensation ("UC") information concerning specified individuals. This Administrative Subpoena, which seeks data regarding all employees at 21 businesses, is something different. Rather than seeking information about particular people suspected of wrongdoing, DHS's Immigration and Customs Enforcement ("ICE"), wanted wage reports of twenty-one businesses so that it could run employee social security numbers through its databases in the hopes of *possibly* discovering a target for its newly focused worksite immigration enforcement. By doing so, DHS exceeds its own statutory subpoena power and the boundaries imposed by federal and state law in a manner that will harm the Department of Labor's administration of Delaware's UC system. The Administrative Subpoena should therefore be quashed.

---

[1] D.I. 15 (Pet. Resp. Mtn to Unseal) at 2.

"Context is important."[2] On January 20, 2025, within hours of inauguration, President Trump signed several executive orders related to immigration, including Proclamation 10888, *Guaranteeing the States Protection Against Invasion*.[3] Proclamation § 5 directs the Secretary of Homeland Security, acting in coordination with the Secretary of State and the Attorney General, to "take all appropriate actions to repel, repatriate, or remove any alien engaged in the invasion across the southern border of the United States on or after the date of this order."[4]

Within three weeks of the Proclamation, Department of Homeland Security DHS/ICE issued two administrative subpoenas to DDOL/UI, seeking protected employer quarterly wage reports for ten (10) businesses. A third subpoena and finally, the Administrative Subpoena, followed. Collectively, ICE wanted wage reports of twenty-one businesses so that it could run employee social security

---

[2] *See*, *In re Administrative Subpoena*, 2025 WL 2607784, *Mem. Op.*, (Sept. 9, 2025) at *6 (quashing an administrative subpoena to Boston Children's Hospital seeking records related to its gender-affirming care as part of a purported investigation into the unlawful off-label promotion of puberty blockers and cross-sex hormones in violation of the Food, Drug, and Cosmetic Act ("FDCA"). A copy is attached as Exhibit B

[3] Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, 90 Fed. Reg. 8333, 8334–35 (Jan. 20, 2025) (the "Proclamation").

[4] *Refugee and Immigrant Center for Education and Legal Services, et al. v. Kristi Noem*, 2025 WL 1825431(D.C. D. Ct., July 2, 2025)(enjoining the government and agencies from implementing Sections of the Proclamation).

numbers through its databases in the hopes of *possibly* discovering a target for its newly focused worksite immigration enforcement.

ICE's discretion to issue subpoenas, though wide, is not unlimited, as discussed herein.[5] Here, the administrative proceeding is a prohibited fishing expedition in search for "wrongdoing, as yet unknown," rendering the Administrative Subpoena unenforceable.[6] ICE has failed to establish a nexus between the hotline "tips" and the records subpoenaed and has failed to provide this Court with sufficient facts to evaluate the connection between the nature and scope of the information requested and its investigation. It is overly burdensome in that compliance would unduly hinder the normal operations of DDOL. Compelling disclosure would also violate federal and state UC law, damage the trust between employers and DDOL/UI, and pose a significant risk to the solvency of the State Unemployment Insurance Trust Fund ("UI Trust Fund"); federal law expressly permits DDOL to refuse production when that is the case, and therefore the Petitioner's Supremacy Clause arguments fail.[7]

In short, the Administrative Subpoena was issued for an improper purpose and is unenforceable.

---

[5] *See*, *Jersey v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003).
[6] *In re Sealed Case* (Administrative Subpoena, 42 F.3d 1412, 1418 (D.C. Cir. 1994).
[7] Secretary of Labor LaKresha Moultrie Declaration ("Moultrie Dec. ¶_.") ¶51, 53-54; 20 C.F.R. § 603.5.

## II.    BACKGROUND

### A. <u>Confidentiality is the Linchpin of the Joint Federal-State UC Program Created by the Social Security Act of 1935</u>

Ninety years ago, in response to the Great Depression, Congress enacted the watershed Social Security Act of 1935, creating a unique joint federal-state UI Program.[8] UI is the first economic line of defense against the collective impact of unemployment and acts as a safety-net for individuals who lose their jobs through no fault of their own.[9] Eligible claimants have a constitutionally protected property interest in UC benefits.[10]

The United States Department of Labor ("USDOL") is responsible for ensuring that state unemployment laws comply with the mandatory federal criteria set out by Congress.[11]  Because state UC laws are mandated by the federal statute, interpretations of the federal statute by federal agencies such as the USDOL have historically been afforded great weight. *Brennan v. Owensboro-Daviess C. Hosp., etc.* (6th Cir. 1975), 523 F.2d 1013, 1028, *cert. den.* 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796.

---

[8] *See,* 26 U.S.C. § 3301; 42 U.S.C. § 501 et seq., § 1101 *et seq.*; 42 U.S.C.§503.
[9] D.I. 14-1 Moultrie Dec. ¶6.
[10] *See, Ross v. Horn*, 598 F.2d 1312, 1317 (3d Cir. 1979) ("[A]ppellants certainly have a property right in receiving unemployment benefits to which they are entitled by statute."). *See also, e.g., Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 900 (6th Cir. 2019) (same); *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985) (same).
[11] 26 U.S.C. § 3304; 42 U.S.C. § 503.

As a condition for a State to receive federal administrative grants, State UC law must provide for "methods of administrations…as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due."[12] The USDOL's "longstanding interpretation" of the SSA requirement is that "UC information collected and maintained for the administration of the UC program are confidential and…not subject to disclosure," with limited exception.[13]

Delaware's Labor Act and its implementing regulations codify the State's obligation to provide unemployment benefits and to maintain the confidentiality of all "UC information"[14] consistent with the requirements of the Social Security Act.[15] Delaware's General Assembly included in the Labor Act a declaration of Delaware's

---

[12] 42 U.S.C. 503(a)(1) & (a)(8).

[13] U.S. Department of Labor, Employment Training Administration, *Unemployment Insurance Program Letter No. 34-97* ("UIPL 34-97"). https://www.dol.gov/agencies/eta/advisories/unemployment-insurance-program-letter-no-34-97. Issued prior to 20 C.F.R. §603, Subpart B, UIPL 34-97 provided guidance on the necessity of confidentiality: "**[a]ny publicity could have disrupting effects on the operations of the State agency and effect the agency's mission of insuring claimants 'full payment of unemployment compensation when due.'**" UIPL 34-97 served as interim guidance to states until the federal confidentiality rules governing the disclosure of unemployment compensation information were final. *See*, 20 C.F.R. §603, Subpart B.

[14] "Confidential UC Information" includes the wage reports sought by the Administrative Subpoena. *See* 20 C.F.R. §603.4(b) & (c).

[15] 19 *Del. C.* §3301, *et seq.*; *see also*, title 19, *Del C.*, Chpt. 34; 19 *Del. Admin. Code* § 1201, *et seq.*

UC public policy as follows:

> economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State. …. The achievement of social security requires protection against this greatest hazard of our economic life. This can be accomplished by encouraging employers to provide more stable employment and *by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance.*[16]

The General Assembly furthered declared that "the public good and the general welfare of the citizens of this State" requires "the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own," thereby creating Delaware's UC Trust Fund.[17]

USDOL has consistently maintained that "[c]confidentiality is necessary" to effectuate Congress' intent in enacting the UI social program.[18] Confidentiality fosters the necessary participation by employers (and claimants alike) as wage

---

[16] 19 *Del. C.* §3301(emphasis added).

[17] *See* 19 *Del. C.* §3161.

[18] *See* U. S. Department of Labor, Employment and Training Administration, *Federal-State Unemployment Compensation Program; Confidentiality and Disclosure Of State UC Information*, 71 Fed. Reg. 56830, (Sept. 27, 2006)("Final Rule")("Confidentiality is necessary to avoid deterring individuals claiming benefits or exercising their rights, to encourage employers to provide information necessary for program operations, to avoid interference with the administration of the UC program, and to avoid notoriety for the program if program information were misused."). *See also*, U. S. Department of Labor, Employment and Training Administration, *Federal-State Unemployment Compensation Program; Confidentiality and Disclosure of State UC Information*, 69 Fed. Reg. 50,022, 50,025 (August 12, 2004) ("Proposed Rule") (citing UIPL 34-97).

reports provide "the information necessary for program operations." DDOL/UI uses wage reports to calculate employers UI tax liability, which fund Delaware's UI Trust Fund.[19] Without employer UI taxes, the UI system collapses.[20] Thus, the "method of administration" that "insures full of payment of unemployment compensation when due" is maintaining the confidentiality of wage reports.[21] Federal regulations establish threshold requirements for confidentiality and encourage state UC laws to afford greater confidentiality protections to employers and claimants than the minimum federal requirements.[22]

Federal UC regulations mandate disclosures of UC information where disclosure is "necessary for the proper administration of the UC program."[23] Mandatory disclosures include disclosure "to claimants, employers, the Internal Revenue Service, and the U.S. Citizenship and Immigration Services ("USCIS")

---

[19] D.I. 14-1 ¶ 8-9, 11, Moultrie Dec.

[20] *Id*. ¶12.

[21] 42 U.S.C. §503(a)(1) & (a)(8), 42 U.S.C. §503; UIPL 34-97. 20 C.F.R. §603.4(c). State laws much also provide for penalties for "any disclosure of confidential UC information that is inconsistent with" the confidentiality requirement in 20 C.F.R. §603.4(b).

[22] *See,* Final Rule, 71 Fed. Reg. at 56831 ("The Department appreciates that states have valid reasons for maintaining UC confidentiality laws that are stricter than those required by the rule. On balance...[the federal rule] serves to enhance confidentiality requirements by making disclosures subject to the minimum requirements of the rule while permitting states to provide additional protections."). 19 *Del. C.* §3125; 12 *Del. Admin. C.* §12.

[23] *See,* 20 C.F.R. §603.6(a).

(solely for the purpose of verifying the immigration status of non-citizen applicants / recipients of certain federally funded benefits).[24] Disclosure to ICE has never been mandated by federal law.

Although there are no mandatory disclosure requirements to ICE under federal UC law, there are two relevant exceptions that allow disclosure to "public officials…in the performance of their official duties," 20 C.F.R. §603.5(e), and to "officials with subpoena power…as specified in 20 C.F.R. §603.7."[25] The exceptions require a state UC agency to evaluate the potential harm of disclosure: disclosure is permitted "*only if* authorized by State law and if such disclosure does not interfere with the efficient administration of State UC law."[26] Consistent with federal law, Delaware UC law provides for the same permissive disclosure exceptions, provided such disclosure will not "impede the operation of, and is not inconsistent with the purpose of" the DDOL/UI and is "authorized in writing in individual cases by the

---

[24] *Id*. USCIS created the Systematic Alien Verification for Entitlements (SAVE) Program for state and local benefit issuing agencies and institutions that administer such benefits to verify the immigration status of applicants for benefits. SAVE's website assures it maintains the security of its data, and that it does *not* "share information provided by user agencies for administrative (non-criminal) immigration enforcement purposes." https://www.uscis.gov/save/about-save/about-save. Participation in SAVE by state UC agencies is voluntary. DDOL/UI utilizes SAVE to ensure compensation benefits are only paid only to eligible applicants. Declaration of Marie Cameron ¶6-7 (attached hereto as Exhibit A).
[25] 20 C.F.R. § 603.5(h).
[26] 20 C.F.R. § 603.5.

Delaware Secretary of Labor." [27]

In most circumstances involving the disclosure of confidential UC information, there must be a written agreement with the state or state UC agency that contains safeguards to protect against unauthorized access, use, and redisclosure, and that provides for payment of the costs of disclosure.[28] There is no such agreement between DDOL/UI and ICE. However, DHS has entered into data sharing agreements with the USDOL's Office of the Inspector General ("OIG"), although it does not provide for the sharing of employer UC information with ICE or for the purpose of immigration enforcement.[29]

## B. Administrative Subpoenas Issued to the DDOL/UI

ICE issued four (4) Immigration Enforcement Subpoenas bearing the federal agency logo and name "U.S. Immigration and Customs" ("ICE"), to the DDOL/UI between February 3, 2025, and April 7, 2025.[30] Collectively, the Subpoenas directed production of wage reports containing the financial and identifying information of twenty-one (21) businesses and their employees "in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws."[31]

---

[27] *See*, 19 *Del C.* §3125(a)(4); 19 *Del. Admin. C.* §12.5.
[28] *See generally*, 20 C.F.R. §603.3 & §603.9.
[29] *Revised MOU between DHS and Labor Concerning Enforcement Activities at Worksites* (May 10, 2016).
[30] *See generally* D.I. 1.
[31] *See generally* D.I. 1; D.I. 14-1 ¶ 29(b) – (e), Moultrie Dec.

Due to DHS's failure to provide business FEIN numbers, except for one,[32] and because there were discrepancies in the businesses names/addresses on the subpoenas when compared to DDOL/UI's records,[33] DHS's requests implicated the wage reports of other similarly named businesses and the potential disclosure of nearly 600 employees' social security numbers not actually requested by DHS.[34] For some businesses, DDOL/UI was unable to locate any records.[35] Despite multiple requests, Caraway never provided the FEIN numbers for 20 businesses.[36]

Unlike other administrative subpoenas received by DDOL from other law enforcement agencies, including the FBI and DEA, there was no indication of a

_____

[32] *Id.* ¶29(d)–(e).

[33] In response to a request for confidential employer UI information, DDOL/UI will not release employer filed data unless either the request provides the business' FEIN number or, alternatively, if the FEIN number is not provided, the business' legal name and address provided on the request must match exactly the business' legal name and address in DDOL/UI's database. D.I. 14-1 ¶33, ¶ 38-39, 42-43, Moultrie Dec.

[34] D.I. 18-1, ¶¶9-12, Declaration of Marlon Tann, ("D.I. 18-1, Tann Dec. ¶ ").

[35] *Id.* ¶10-11.

[36] Crystal Wimbush communicated DDOL/UI's need for FEIN numbers to Caraway on February 10, February 11, February 14 and March 26, 2025. D.I. 14-1, ¶29 (b), Moultrie Dec. In the communications between Wimbush and Caraway, there is confusion as to what the businesses "File #s" reference. *Id.* ¶47.On April 7th, Caraway explained the "File #s" are the Division of Corporations "identifiers.' *Id.* DDOL/UI does not track nor identify businesses in their database by their Division of Corporation "File #." *Id.* ¶24.

related criminal investigation.[37] Before the return date of the February 3rd and 7th

Subpoenas, Agent Caraway explained,

> HSI is now focused on worksite enforcement and wage reports are an essential part of our investigations. These subpoenas are forecasted to increase in number. Unfortunately, I do not have FEIN numbers, but please let me know if TIN or file numbers will help. Please send the results for each company as they become available. Thank you for your assistance, it is greatly appreciated.[38]

Consistent with Caraway's "forecast," DDOL/UI received a third subpoena dated

March 4, 2025, requesting another 10 businesses' wage reports.[39] The

Administrative Subpoena dated April 7, 2025, which superseded the prior

subpoenas, requested records for 15 businesses.[40]

Notably, the subpoenas requested the wage reports of businesses "in labor

industries that are often commonly thought to employ people of color, whether those

---

[37] "Box 2," which requires DHS to indicate what a subpoena is specifically issued "in reference to," and to include a "Title of Proceeding" or "File Number, if Applicable," was left blank on all four subpoenas See generally, D.I. 1.

[38] D.I. 18-2, Caraway's email to DDOL/UI, February 12, 2025.

[39] D.I. 14-1 ¶ 29 (b), Moultrie Dec. The March 4th subpoena included business "File #s" and only FEIN number. *Id*. In the communications between Wimbush and Caraway, there is confusion as to what the businesses "File #s" reference. D.I. ¶47 Moultrie Dec. On April 7th, in the email attaching the Administrative Subpoena, Caraway explained the "File #s" are the "identifiers" assigned to each business by the Delaware Division of Corporations. *Id*. DDOL/UI does not track nor identify businesses in their database by their Division of Corporation "File #." *Id*. ¶24.

[40] D.I. 1.; D.I. 18-1 ¶29(e) Tann Dec. For reasons unexplained, as of April 7, the wage reports of 6 businesses were no longer of interest to ICE.

employees are American citizens or not."[41] "[I]t is unusual, if not unprecedented, for DDOL/UI to receive an ICE immigration enforcement administrative subpoena for wage records in connection with solely civil immigration enforcement."[42] A recent search of DDOL/UI records revealed DHS has historically issued administrative subpoenas for wage records of individuals in connection with DHS *criminal* investigations of specific individuals, such as fraud/identity theft, controlled substances enforcement and child exploitation, but not in matters of civil immigration enforcement only.[43]

## III.   LEGAL STANDARD

Absent a court order, administrative subpoenas are not enforceable.[44] To be enforceable, the government must demonstrate (1) the investigation is conducted for a legitimate purpose, (2) the inquiry is relevant to the purpose, (3) the information sought is not within the agency's possession, and (4) the administrative steps required by statute have been followed; and (5) the demand for the information is not unreasonable.[45]

While courts have historically afforded administrative agencies deference in

---

[41] D.I. 14-1 ¶52(b), Moultrie Dec.
[42] *Id.*
[43] *Id.*
[44] *See* 8 U.S.C § 1225(d)(4)(B).
[45] *Jersey v. Corrigan*, 347 F.3d at 64.

conducting investigations, federal courts "have never lent their enforcement machinery…in the manner of a rubber stamp."[46] An administrative subpoena can be challenged on "any appropriate ground."[47]

"The gist of the [Fourth Amendment] protection [against administrative subpoenas] is in the requirement ... that the disclosure sought shall not be unreasonable."[48] "Persons from whom [an agency] seeks relevant information are not required to submit to [the agency's] demand, if in any respect it is unreasonable or overreaches the authority Congress has given."[49]

An administrative subpoena issued for an improper purpose, in bad faith or for any purpose that might "reflect on the good faith of the particular investigation" is unenforceable.[50]

## IV. THE ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED

### A. DHS Lacks the Statutory Authority to Issue "John Doe" Subpoenas

---

[46] *In re Grand Jury Proceedings*, 486 F.2d 85, 90 (3d Cir. 1973).
[47] U.S. v. *Powell*, 379 U.S. 48, 58 (1964)(quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964).
[48] *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-09 (1946).; *U.S. v. Morton Salt Co.,* 338 U.S. 632, 652-53 (1950); *McLane v. EEOC,* 137 S. Ct. 1159, 1165 (2017).
[49] *Okla. Press*, 327 U.S. at 217; see also *Doe v. United States*, 253 F.3d 256, 265 (2001)(holding that an administrative subpoena must "satisfy[y] the terms of the authorizing statute.").
[50] *Powell*, 379 U.S. at 58.

ICE's authority to issue subpoenas for investigatory purposes is created solely by statute.[51] While 8 U.S.C. § 1225(a) grants DHS authority to investigate immigration offenses, that authority is not without limits. ICE's subpoena authority is not a license to search through DDOL's records in search of targets for immigration enforcement.[52]

The genesis of ICE's investigation was a spike in hotline tips, some of which reported Delaware businesses allegedly employing undocumented aliens."[53] In a creative way to use its subpoena power, ICE issued four successive subpoenas for wage reports to obtain the identity of every business's employee and their social security numbers. ICE intended to run the numbers through its database to determine if any of them *could be* identifiable targets of immigration enforcement.[54] This tactic, known as issuing blanket "John Doe" subpoenas to a third-party record holder for the purpose of identifying targets, has been deemed beyond ICE's statutory subpoena authority conferred on ICE by Congress. *Peters v. U.S.*, 853 F.2d at 692,

---

[51] 8 U.S.C. §1225(d)(4)(A).
[52] *In re Sealed Case (Admin. Subpoena),* 42 F.3d 1412, 1418 (D.C. Cir. 1994)(in issuing administrative subpoena, agency cannot rely on its broad investigatory powers to pursue "other wrongdoing, as yet unknown.").
[53] D.I. 2-1 ¶6, Caraway Declaration.
[54] *Id.* ¶8. Wage reports contain employees' names and social security numbers that ICE, by UC law, has no means to access. Unlike USCIS, ICE's sister agency focusing on immigration issues related to benefits eligibility, federal UC law does not mandate disclosure of any UC information to ICE for immigration enforcement purposes.

695 (9th Cir. 1996) (INS lack authority to issue "John Doe" subpoenas under 8 U.S.C. §1225(d)(4)).

In *Peters*, INS issued a subpoena to a labor camp seeking "tenant files" in connection with a criminal case relating to undocumented immigrants residing at the camp.[55] No individual tenant was identified.[56] The Ninth Circuit distinguished 8 U.S.C. §1225(d)(4)(A) from the IRS' explicit "John Doe" subpoena power authority conferred upon it by Congress, and it quashed INS's subpoena as outside INS's third-party subpoena authority.[57] The Court noted the procedural safeguards Congress implemented to address the "fishing expedition" and privacy concerns inherent in "John Doe" subpoenas are not present in 8 U.S.C. §1225(d)(4)(A) and the lack of any INS regulations that governed the issuance of such a subpoena.[58]

ICE's "John Doe" subpoenas issued to DDOL/UI exceeded the scope of ICE's subpoena authority. The subpoenas clearly state they are immigration enforcement, not in connection with an investigation of employers pursuant to 8 U.S.C. §1324a(a)(1).[59] While the subpoenas listed employers, the purpose, as explained by

---

[55] *Peters*, 853 F.2d at 692.

[56] *Id*. at 694.

[57] *Id*. at 698-70.

[58] *Id*. at 699-700. 26 U.S.C. §7609 requires the IRS demonstrate to a court the existence of a "reasonable basis" to believe a violation of the tax law has occurred. *Id*. at 698.

[59] *See generally*, D.I. 1.

Caraway, was to identify targets yet unknown via social security numbers. ICE's "John Doe" subpoena exceeded its statutory authority and is unenforceable.

## V. THE GOVERNMENT FAILS TO DEMONSTRATE THE RELEVANCY OF THE SUBPOENAED WAGE REPORTS

Should this Court find the Administrative Subpoena is within DHS' statutory subpoena power, it is nonetheless unenforceable as the government has not demonstrated the relevancy of the subpoenaed wage reports to its investigation.

While courts have generally construed the concept of relevancy broadly, *EEOC v. Franklin & Marshall Coll.,* 775 F.2d 110, 116 (3d Cir.1985), a court must not construe the relevance requirement so broadly as to confer "unconstrained investigative authority" upon the agency. *EEOC v. Shell Oil, Co.,* 466 U.S. 54, 64-65 (1984); *see also EEOC v. United Air Lines, Inc.,* 287 F.3d 643, 653 (7th Cir. 2002). The relevance requirement "is designed to cabin the [agency's] authority and prevent fishing expeditions." *United Air Lines,* 287 F.3d at 653 (quotation marks omitted). The agency bears the burden of demonstrating relevance. *See EEOC v. S. Farm Bureau Cas. Ins. Co.,* 271 F.3d 209, 211 (5th Cir. 2001).

### A. The Government Fails to Demonstrate the Wage Reports Are Reasonably Relevant to Any Lawful Investigation

The government seeks to invoke this Court's power to enforce based on only three facts: (1) "[s]ince January 2025, there has been "a significant increase in

16

investigative leads from [ICE's] tip line," (2) "the majority of these leads have reported illegal immigration;" (3) some of the tips reported "individuals in Delaware without lawful immigration status, while others reported Delaware businesses allegedly employing undocumented aliens."[60] Employer wage reports can be a useful investigative tool "to substantiate the leads about businesses allegedly employing undocumented aliens."[61] Glaringly absent from the government's proffer are any facts establishing a nexus between the "tips" and the subpoenaed wage reports.

When a subpoena is challenged on the criteria of relevancy, the court is required to "evaluate the relationship between the particular materials sought and the particular matter under investigation—an analysis 'variable in relation to the nature, purposes and scope of the inquiry.'" *McLane v. EEOC,* 137 S. Ct. 1159, 1167-68 (2017) (quoting *Okla. Press*, 327 U.S. at 209). Here, the government proffers no evidence that the businesses whose wage records were subpoenaed are related to the "tips." In fact, it proffers no specific evidence of the relationship between the wage reports and the "tips" or individual employees.

To the extent the government asserts that this Court could somehow infer that the "tips" related to the subpoenaed information, this Court should not entertain such

---

[60] D.I. 2-2 ¶6, Caraway Dec.
[61] *Id.* ¶¶ 7-9.

a leap. Caraway's Declaration fails to provide sufficient facts from which this Court can infer any nexus between the businesses and the "tips" or determine whether the nature, scope or time frame (wage reports from the third and fourth quarter of 2024) is reasonable. See, *United States v. Goldman*, 637 F.2d 664, 666 (9th Cir. 1980) (affirming the district court's denial of enforcement after finding that "the government had not met its light burden in establishing that the records [from two years prior to the agent's examination] were relevant").

The burden to establish relevancy is on the government. For all this Court knows, ICE could have received a "tip" about one ethnic restaurant and subpoenaed information about three. Because ICE fails to proffer sufficient evidence from which this Court can evaluate the nature and scope of the request, the subpoena is unenforceable. To do otherwise would render the relevance requirement meaningless.

ICE's claim that social security numbers are relevant to its current investigation because they assist ICE in determining whether any employees are using fake social security numbers does not establish the necessary relevance.[62] While DDOL/UI does not dispute the usefulness of social security numbers, usefulness does not establish relevance in this case because social security numbers

---

[62] *Id.*¶ 9.

would be useful in *any and every* ICE investigation of any employer. Enforcing the subpoena based on usefulness could effectively and permanently open DDOL/UI's confidential records to ICE's fishing expeditions and deprive future recipients of administrative subpoenas meaningful review in future enforcement actions.

Federal and state UC law do not grant ICE access to wage reports for the purposes of randomly obtaining employee social security numbers and this Court should not construe the relevance requirement so broadly as to confer "unconstrained investigative authority" upon ICE. *Shell Oil,* 466 U.S. at 64–65; *see also EEOC v. United Air Lines, Inc.,* 287 F.3d 643, 653 (7th Cir. 2002).

### B. <u>The Administrative Subpoena is Unreasonable: The Demand is Too Indefinite, Overbroad and Unduly Burdensome.</u>

Assuming this Court finds the government has demonstrated relevance, the Administrative Subpoena is too indefinite, overbroad and unduly burdensome to enforce. *See, Morton Salt*, 338 U.S. at 652 (a subpoena demand is unreasonable if it is too indefinite or excessive). The subpoena here is an invasive fishing expedition that threatens to disrupt DDOL/UI's efficient administration and undermines Congress' intent to provide an economic safety net through the payment of UC benefits "when due." 42 U.S.C. §503(a)(1).

The government's contention that the subpoenas issued to DDOL/UI were specific enough for DDOL/UI to identify the records requested is patently contrary

to the email communications between DDOL/UI and Caraway.[63] The Declarations

submitted by both the government and DDOL/UI document DDOL/UI's repeated

requests for business FEIN numbers because the descriptions of the businesses are

too indefinite.[64] Based on what ICE provided, DDOL/UI could not confirm or verify

many of the businesses whose records were requested.[65] There were discrepancies

between the business's names or addresses (or both) and DDOL/UI's records. *Id*.

For some of the businesses listed, there were multiple possible businesses whose

records could possibly have been the subject of DHS's request. *Id*. Because ICE

never provided the FEIN numbers for the businesses (except for one), Marlon Tann,

the DDOL/UI's Field Agent who searches DDOL/UI's records in response to a

request, could not verify the confidential information DDOL/UI could release (if

ordered to do so) was even responsive to the majority of DHS's subpoenas request.[66]

In other words, because of the indefiniteness of ICE's requests, DDOL/UI could not

confirm it would not be releasing the confidential records of other businesses and

employees. To compel DDOL/UI to produce records when the description was so

vague that DDOL/UI staff might be subject to penalty for disclosing confidential

---

[63] D.I. 1-2, p. 9, ¶30.
[64] D.I. 2-2 ¶16, 18, Caraway Dec; D.I. 14-2 ¶37-48, Moultrie Dec.
[65] D.I. 18-1 ¶9-12 Tann Dec.
[66] *Id*.

information is unreasonable.[67]

Moreover, the subpoena's request for wage reports is overbroad. *See*, *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 169-71 (3d Cir. 1986) (evaluating a subpoena challenged as overly broad under a "relevancy standard"); *United States v. Freedom Church*, 613 F.2d 316, 321-22 (1st Cir. 1979) (reviewing the a challenge to the scope of the IRS summons in terms of its relevancy to the investigation). ICE's request is not limited in any way; it seeks the social security numbers of every employee who worked for 15 different businesses in the third and fourth quarter of last year. ICE's administrative subpoenas since February have threatened the improper disclosure of the protected information of hundreds of employees.[68]

ICE offers nothing to justify such a sweeping encroachment on the privacy of people working in Delaware or such an incredible departure from UC laws.[69] ICE has offered no concrete factual basis of any alleged immigration violation by any specific employee or any pattern of violations by any specific employer. In fact, six of the businesses whose records ICE previously requested are no longer of interest to ICE, which raises significant doubt as to the legitimacy of these hotline "tips" ICE relies on in this action. ICE asks this Court to allow it to rifle through DDOL/UI's

---

[67] *See,* 19 *Del. C.* § 3125(d).
[68] D.I. 18-1¶9-11, Tann Dec.
[69] *See,* 20 C.F.R. §603; 19 *Del C.* §3125(a)(4); 19 *Del. C.* §12.0.

records (and intends to do so with increased frequency) in the hopes that social security numbers lead to a target of illegal immigration. The Government may be correct that it need not provide probable cause for its investigations, but it cannot use its subpoena power to go on a fishing expedition.

A subpoena must be "suitably specific and properly limited in scope," *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000), as the government is not permitted to "rummage through … office files … in the hope of perchance discovering information" that would result in liability, *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973). ("The Government cannot go on a "fishing expedition" . . . and where it appears that the purpose of the summons is "a rambling exploration" of a third party's files, it will not be enforced") (citations omitted); *In re Sealed Case (Admin. Subpoena)*, 42 F.3d at 1418 (quashing subpoena to the extent that the agency sought "unfettered authority to cast about for potential wrongdoing"). ICE's overbroad subpoena request is an attempt to access data that it does not have access to under federal and state UC law. ICE's fishing expedition should not be sanctioned by this Court.

Most egregiously, the subpoena is overly burdensome. Compelling production of highly regulated, protected information "threatens to unduly disrupt [and] seriously hinder normal operations" of the UC program. *United States v. Joint Active Sys., Inc.*, 2020 WL 9747630, at *4 (D. Mass. May 20, 2020), *report &*

*recommendation adopted*, 2020 WL 9748373 (D. Mass. Oct. 7, 2020).

Confidentiality is vigilantly guarded by laws to effectuate Congress' intent: ensuring payments of benefits to eligible claimants to avert economic instability by encouraging employer and claimant participation. *See,* UIPL 34-17; 20 C.F.R. §603, *et seq.* Upending the delicate balance struck by the rules and usurping the discretion afforded to Delaware in crafting its UC laws will disrupt the efficient administration of Delaware's UC program; thereby risking the solvency of the UI Trust Fund and undermining Congress' intent to protect Americans and the economy from economic instability.

Confidentiality is the linchpin of the Federal-State UC Program. The USDOL has never wavered from its interpretation of the 42 U.S.C. §503(a)(1), SSA. See, UIPL 34-17.

> **Confidentiality is necessary… to encourage employers to provide information necessary for program operations, to avoid interference with the administration of the UC program, and to avoid notoriety for the program if program information were misused**."[70]

The federal agency responsible for ensuring state unemployment laws comply with the criteria set by Congress determined safeguarding confidentiality of UC information, including wage reports, is *the* "method[] of administration" that is "reasonably calculated to insure full payment of unemployment compensation when

---

[70] UIPL- 34-17.

due." 26 U.S.C. § 3304; 42 U.S.C. § 503. Interpretations of federal statutes by federal agencies such as the U. S. Department of Labor are entitled to great weight. *Brennan v. Owensboro-Daviess C. Hosp., etc.* 523 F.2d 1013, 1028 (6th Cir. 1975)

To comply with federal law, the DDOL/UI must pay benefits "with the greatest promptness that is administratively feasible." 20 C.F.R. § 650.3(a); *Fusari v. Steinberg,* 419 U.S. 379, 387–88 (1975); *California Department of Human Resources Development v. Java,* 402 U.S. 121, 131 (1971). Because payment of benefits is dependent on employers filing wage reports, they are protected and not subject to disclosure.

There are two exceptions to confidentiality that are implicated, but neither permit disclosure in this case: disclosure to a "public official," 20 C.F.R. § 603.5(e), and disclosure to "officials with subpoena power," 20 C.F.R. § 603.7. Disclosure is permissive under those exceptions, provided it is consistent with the efficient administration of State UC law." 20 C.F.R. § 603.5. Delaware UC law includes the same exceptions; however, disclosure is only permitted if it will not "impede the operation of, and is not inconsistent with the purpose of" the DDOL/UI and is "authorized in writing in individual cases by the Delaware Secretary of Labor."[71]

The government mistakenly contends the "official with subpoena authority"

---

[71] *See,* 19 *Del C.* §3125(a)(4) and supra n. [27].

exception is not subject to the Secretary of Labor's determination of whether disclosure "will impede the operation of" DDOL/UI and the UI program because 20 C.F.R. §603.5 states disclosure "is permissible under the exception…without such restrictions." However, the exception for disclosure to an "official with subpoena authority" is governed by 20 C.F.R. §603.7, not §603.5(h).

As a general matter, 20 C.F.R. §603.7(a) requires state UC agencies to resist subpoenas by filing a motion to quash. 20 C.F.R. 603.7(a).[72] However, a subpoena from an "official with subpoena authority" does not require the filing of a motion to quash prior to disclosure. 20 C.F.R. §603.7(b)(2).[73] The 2004 Proposed Rule explains a motion is not required, but nonetheless encouraged, as is review of state law to determine if it is "rigorous" enough to encourage courts not to enforce

---

[72] THE USDOL explained the requirement of moving to quash subpoenas in the 2004 Proposed Rules "We believe that filing motions to quash subpoenas involving the disclosure of confidential UC information is an important means of avoiding unnecessary or unlawful disclosures, which might deter claimants from exercising their rights or employers from providing information." 71 Fed. Reg. at 50028.

[73] A second exemption from the requirement of moving to quash prior to disclosure are subpoenas where there exists "a binding precedential decision" or a "well-established pattern of prior court decisions required disclosures" of the same type," 20 C.F.R. §603.7(b)(1).

subpoenas.[74] *Id*. The exemption exists to avoid a waste of resources where there exists binding court precedent and to facilitate cooperation with law enforcement, not to insulate administrative subpoenas from judicial review, Final Rule, 71 Fed. Reg. at 56838, not to insulate subpoenas from officials from assessing harm from a potential disclosure. See, 19 *Del Admin. C* §12.5.

Secretary Moultrie exercised her discretion under 20 C.F.R. §603.5(a) and 19 *Del. Admin. C.* §12.5 and resisted disclosure because it would interfere with the efficient administration of the UC program.[75] Disclosure would likely have a chilling effect on employers voluntarily filing quarterly wage reports and paying their UC tax assessments.[76] Worksite raids would have a destabilizing effect on the stability of Delaware's labor market and workforce.[77] Disclosure risks the solvency of the UI Trust Fund and impedes DDOL/UI's compliance with federal law.

Moultrie's decision was in full accord with the USDOL's confidentiality policy and its purpose: to "encourage employers to provide information necessary

---

[74] Proposed Rule: "Where the exceptions apply, a state may still file such a motion if warranted, or may file a motion to require that the recipient protect the disclosed information or for reimbursement of costs....If the state law is sufficiently rigorous concerning the release of confidential UC information, the courts may be less inclined to enforce subpoenas, so states may wish to review their state laws in this regard." 69 Fed. Reg. at 50028.
[75] D.I. 14-1 ¶49, Moultrie Dec.
[76] *Id*. ¶54-55
[77] *Id*. ¶52(c).

for program operations" and to pay benefits "with the greatest promptness that is administratively feasible."[78]

The government contends that any state law prohibiting the disclosure of the wage reports would be preempted under the Supremacy Clause. U.S. Const., art. VI, cl. 2.[79] To the contrary. Rather than conflict with federal law, Delaware UC law implements confidentiality laws as required by the SSA and 20 C.F.R. §603.4(c). 19 *Del. C.* §3125 and 19 *Del. Admin. C.* §12.5 governing confidentiality are in complete accord with federal UC law; there is no conflict between state and federal UC law.

Even if this Court were to find a conflict exists, state UC laws are not preempted by the federal law. *See*, *Cosby v. Ward*, 843 F.2d 967, 977 (7th Cir. 1988)(without "strong evidence of interference or conflict" court deferred to more stringent state work-search rules).[80] "Congress left administration of the unemployment statutes to a federal agency." See, *Cosby*, 843 F.2d at 978 (citing

_____

[78] UIPL 34-17; See, 20 C.F.R. § 650.3(a); *Fusari*, 419 U.S. at 387–88; *California Department of Human Resources Development v. Java,* 402 U.S. 121, 131 (1971).
[79] D.I. 15, p. 15.
[80] *See also, New York Tel. Co. v. New York State Dep't of Lab.*, 440 U.S. 519, 543, 545-546 (1979) ("In all events, a State's power to fashion its own policy concerning the payment of unemployment compensation is not to be denied on the basis of speculation about the unexpressed intent of Congress."); SSA has always allowed the States great latitude in fashioning their own programs; New York properly "sought to administer its unemployment compensation program in a manner that it believes best effectuates the purposes of that scheme."); *Gann v. Richardso*n, 43 F.Supp. 896 (S.D. Ind. D.Ct. 2014)(noting the SSA "grants the states 'free rein' to set their own eligibility standards").

*Hillsborough County*, 471 U.S. at 721. Neither the SSA or 20 C.F.R. §603 or the USDOL's UIPL's and guidelines explicitly state an intention to preempt the states' confidentiality requirements. The opposite is true. 20 C.F.R. §603.4(c) encourages states to afford greater confidentiality protections than the minimum federal requirements and thereby effectuate Congress' expressed intent to "ensure full payment" to claimants. 42 U.S.C. §503(a)(1).

Trust is the glue that holds the UC program together – employers trust DDOL/UI to comply with confidentiality rules and DDOL/UI maintains that trust to effectuate its mandate to pay benefits promptly "when due."[81] 42 U.S.C. §503(a)(1). Disclosure of wage reports will damage the relationship of trust between DDOL and employers, which is foundational to the efficient administration of Delaware's UC program. *See*, *EEOC v. Schuff Steel Co*., 2023 WL 4758614 at 3, (D. Ariz., 2023)(partially quashing subpoena as disclosure could "unfairly and unnecessarily damage" relationships")(quoting *Peters v. Milestone Techs., Inc.*, No. CV-21-00138-TUC-RM, 2021 WL 5177856, at *2 (D. Ariz. Nov. 8, 2021)). Even a hint that such UC information could be disclosed undermines employers' confidence in the UC program.

The government cites DDOL/UI's prior compliance with subpoenas issued

---

[81] D.I. 14-1 ¶53, Moultrie Dec.

from federal law enforcement agencies as support for enforcement of the Administrative Subpoena.[82] DDOL/UI does not dispute that it has been cooperative with law enforcement request but never has a law enforcement agency attempted such a blatant overreach in violation of federal law that threatens the survival of DDOL/UI's program at its core.

The government brushes aside the weight of the burden and the real harm that it asks this Court to impose. Without citing any UC law, regulation or authority to the contrary, the government turns a blind eye to the USDOL's longstanding judgment that "confidentiality is necessary" to encourage employer participation in a program that is dependent on employers' cooperation to function. It ignores federal law that delegates to the states the authority to implement rules that reflect the needs of each state to effectuate Congress' intent to maintain the stability of the economy. It asks this Court to override federal policy and law that specifically requires mandatory disclosures to many federal agencies to protect against fraud and abuse, including USCIS,[83] but has never mandated disclosure to ICE for immigration enforcement because of the harm such disclosures will cause. It requests this Court upend the balance struck by federal law where state UC programs are not only authorized, but required to independently assess the risk of harm to the efficient

_____

[82] D.I. 15, pp. 10-11.
[83] *See,* 20 C.F.R. §603.6(a).

administration of their UC program that disclosure would cause.  In essence, the government asks this Court to lend its processes to aid ICE in its effort to grab large amounts of confidential data under circumstances federal law specifically protects against and to do so based on unverified "tips" as part of a new political agenda of immigration enforcement. *See, SEC v. Wheeling-Pittsburgh*, 648 A.2d at 126 (the Court "cannot simply avert [its] eyes from the realities of the political world").

The government's characterization of harm to solvency to the UI Trust Fund as "speculative" reveals its lack of appreciation of the importance of protecting the solvency of Delaware's UI Trust Fund.[84] Delaware's UI Trust Fund was categorized by USDOL as below the federal minimum solvency recommended level from 2015 – 2021.[85] The Secretary of Labor's assessment of harm was far from speculative considering the UI Trust Fund's history of insolvency and DDOL/UI's mandate to pay UI benefits "when due." DDOL's interest in protecting the solvency effectuates Congress' intent in establishing the federal-state UC partnership and far outweighs ICE's interest in immigration enforcement.  Therefore, the subpoena will plainly impose an undue burden not only on DDOL/UI but also on those seeking benefits in the future.

---

[84] D.I. 15, p.14. ("DDOL speculates that employers might not file their wage reports as required if DDOL produced the wage reports subpoenaed by HSI.").
[85] Ex. B, Cameron Dec. ¶8-9.

## VI.   THE SUBPOENA WAS ISSUED FOR AN IMPROPER PURPOSE AND IS UNENFORCEABLE

In an administrative subpoena enforcement action, the Court's "primary concern is with the integrity of the judicial process." *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp*, 648 F.2d 118, 125 (3d Cir. 1981). An abuse of the court's process occurs "if the summons had been issued for an improper purpose, such as to harass… or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.[86]

ICE issued multiple subpoenas for wage reports to obtain employee confidential information in pursuit of immigration enforcement for an improper purpose – to obtain data it has no right to access under UC law. Unlike USCIS, disclosure is not mandated to ICE. At the time these subpoenas were issued, there was no MOA between USDOL or DDOL to share data for immigration enforcement. On August 29, 2025, USDOL released a Notice of Proposed Rule Making proposed changes to the Federal-State UC laws, including 20 C.F.R. §603.5.[87] Nowhere in the proposed rules is disclosure to ICE contemplated. This is because any such disclosure is

---

[86] *Id.*; *See also*, *Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d at 125 ("The inquiries in an adversary enforcement proceeding are limited: a determination that the court's process would or would not be abused by enforcement of the subpoena, and the conclusion that enforcement will be denied or granted.").
[87] U.S. Department of Labor, Employment and Training Administration, *Federal-State Unemployment Compensation (UC) Program; Data Availability*, 90 Fed. Reg. 42,143 (August 29, 2025).

contrary to the long-established rules and policies of the USDOL of encouraging employer participation and avoiding notoriety of the program. The detrimental effect such a disclosure would likely have on the future of Delaware's UC program cannot be overstated. ICE's purpose is improper – it seeks to skirt established UC law to pursue an intense agenda of immigration enforcement. Quashing the Administrative Subpoena is the only way to ensure protected data remains protected

When the court has questions about the appropriateness of a subpoena, it is within the court's discretion to inquire further, hold an evidentiary hearing or "direct further proceedings including discovery." *SEC v. Wheeling* 648 F.2d at 129.[88] Respondent requests the court permit discovery and hold an evidentiary proceeding. *Garden State Nat'l Bank*, 607 F.2d at 71 (holding that when the government's "allegations are factually refuted by the [person opposing the subpoena], thus presenting a disputed factual issue, or where proper affirmative defenses, such as those alleging 'bad faith' ... are factually supported[,] ... the [person opposing the subpoena] is entitled to an evidentiary hearing") ☐HYPERLINK "https://www.westlaw.com/Link/Document/FullText?findType=Y&serNum=19701 20438&pubNum=0000350&originatingDoc=Ic8e71a00c32f11eba327bdb9709491 8d&refType=RP&fi=co_pp_sp_350_700&originationContext=document&vr=3.0

---

[88] *See also, Westinghouse Elec. Corp 788 F.2d 164, 166-67* (3d Cir. 1986)(subpoena issued for improper purpose constitutes an abuse of the court's proces*s).*

&rs=cblt1.0&transitionType=DocumentItem&contextData=(sc.Search)#co_pp_sp_

350_700"United States v. Salter.


## VII. CONCLUSION

For the foregoing reasons, the Court should quash the administrative

subpoena. DDOL/UI would request the opportunity to brief issues related to a

protective order if the court reaches these issues.


Dated: September 24, 2025             Respectfully submitted,


                                      DELAWARE DEPARTMENT OF JUSTICE

                                       /s/ *Jennifer Kate Aaronson*
                                      Jennifer Kate Aaronson (DE Bar No. 3478)
                                      Ian R. Liston (DE Bar No. 5507)
                                      820 N. French Street
                                      Wilmington, DE 19801
                                      (302) 683-8803
                                      jennifer.aaronson@delaware.gov

                                      *Counsel for Delaware Department of Labor*

## CERTIFICATION OF COMPLIANCE WITH TYPE, FONT, AND WORD LIMITATIONS

The undersigned hereby certifies that the foregoing brief contains 7,477 words (inclusive of footnotes) in 14 Point Times New Roman type.

_/s/ Jennifer Kate Aaronson_
Jennifer Kate Aaronson (DE Bar No. 3478)

## CERTIFICATE OF SERVICE

The undersigned certifies that she caused the foregoing Response to The United States' Petition To Enforce Department Of Homeland Security Administrative Subpoena to be served upon all counsel of record via the District of Delaware's electronic filing system on September 24, 2025.


*/s/ Jennifer Kate Aaronson*
Jennifer Kate Aaronson (DE Bar No. 3478)