# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

United States of America,    )
   )
      *Petitioner*,    )
   )
     v.    )     Misc. No. 25-mc-322-CFC
   )
Delaware Department of Labor,    )
   )
      *Respondent*.    )

---

**UNITED STATES OF AMERICA'S
REPLY IN SUPPORT OF ITS PETITION TO ENFORCE
DEPARTMENT OF HOMELAND SECURITY
<u>ADMINISTRATIVE SUBPOENA</u>**

TODD W. BLANCHE
Deputy Attorney General

JULIANNE E. MURRAY
Acting United States Attorney
Special Attorney

Claudia Pare
Assistant United States Attorney
District of Delaware

*Counsel for United States*

Dated:      November 20, 2025

# TABLE OF CONTENTS

I. Introduction ..................................................................................................1

II. The Administrative Subpoena Is Valid and Should Be Enforced..................2

    A. HSI had the authority to issue the Administrative Subpoena ...............2

    B. The Administrative Subpoena seeks documents relevant to HSI's investigation ......................................................................................4

    C. The information demanded is not within HSI's possession.................8

    D. The Administrative Subpoena was issued in compliance with the law 8

    E. The Administrative Subpoena's demand for documents is neither indefinite nor unduly burdensome........................................................8

III. Enforcement of the Administrative Subpoena Would Not Be an Abuse of the Court's Process .........................................................................................13

IV. Neither Federal nor State Unemployment Compensation Laws Excuse DDOL's Failure to Comply with the Administrative Subpoena...................15

    A. Federal UC law permits DDOL's disclosure of the subpoenaed records ............................................................................................15

    B. State UC law is preempted to the extent it prevents DDOL's disclosure of the subpoenaed records..................................................17

V. Further Proceedings Are Unnecessary .......................................................19

VI. Conclusion.................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
567 U.S. 387 (2012) ...................................................................................... 17, 18

*Belle Fourche Pipeline Co. v. United States*,
554 F. Supp. 1350 (D. Wyo. 1983) .........................................................................3

*Couch v. United States*,
409 U.S. 322 (1973) ...............................................................................................13

*Doe v. United States*,
253 F.3d 256 (6th Cir. 2001) ..................................................................................9

*Dole v. Trinity Indus., Inc.*,
904 F.2d 867 (3d Cir. 1990) ...................................................................................5

*EEOC v. Shell Oil Co.*,
466 U.S. 54 (1984) ...............................................................................................6, 7

*Endicott Johnson Corp. v. Perkins*,
317 U.S. 501 (1943) ................................................................................................5

*FTC v. Carter*,
636 F.2d 781 (D.C. Cir. 1980) .......................................................................... 13, 20

*Flast v. Cohen*,
392 U.S. 83 (1968) .................................................................................................14

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) .................................................................................................17

*Hines v. Davidowitz*,
312 U.S. 52 (1941) .................................................................................................18

*In re Admin. Subpoena No. 25-1431-019*,
No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025)..............10

*In re Sealed Case (Admin. Subpoena)*,
42 F.3d 1412 (D.C. Cir. 1994)..............................................................................10

*In re Subpoena Duces Tecum*,
228 F.3d 341 (4th Cir. 2000) ................................................................10

*McLane Co. v. EEOC*,
581 U.S. 72 (2017) ................................................................................6

*Mutual Pharmaceutical Co. v. Bartlett*,
570 U.S. 472 (2013) ............................................................................17

*Okla. Press Pub. Co. v. Walling*,
327 U.S. 186 (1946) ..............................................................................3

*Oregon Prescription Drug Monitoring Program v. DEA*,
860 F.3d 1228 (9th Cir. 2017) ............................................................18

*Peters v. United States*,
853 F.2d 692 (9th Cir. 1988) ........................................................ 2, 3, 4

*Presley v. United States*,
895 F.3d 1284 (11th Cir. 2018) ..........................................................18

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
878 F.2d 875 (5th Cir. 1989) ................................................................6

*Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*,
648 F.2d 118 (3d Cir. 1981) ................................................................20

*U.S. ex rel. Off. of Inspector Gen. v. Philadelphia Hous. Auth.*,
No. 10-0205, 2011 WL 382765 (E.D. Pa. Feb. 4, 2011) ...................18

*United States Dep't of Justice v. Utah Dep't of Commerce*,
No. 16-cv-611, 2017 WL 3189868 (D. Utah July 27, 2017) .............18

*United States v. Garden State Nat. Bank*,
607 F.2d 61 (3d Cir. 1979) ................................................................20

*United States v. Golden Valley Elec. Ass'n*,
689 F.3d 1108 (9th Cir. 2012) ..........................................................4, 5

*United States v. Goldman*,
637 F.2d 664 (9th Cir. 1980) ................................................................7

*United States v. Gomez*,
  445 F. Supp. 3d 1213 (D. Colo. 2020) ........................................................ 14, 15

*United States v. LaSalle Nat. Bank*,
  437 U.S. 298 (1978) ....................................................................................13

*United States v. Michigan Dep't of Cmty. Health*,
  No. 1:10-MC-109, 2011 WL 2412602 (W.D. Mich. June 9, 2011)....................14

*United States v. Minker*,
  350 U.S. 179 (1956) ......................................................................................2

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ....................................................................... 2, 3, 7, 9

*United States v. Powell*,
  379 U.S. 48 (1964) ......................................................................................13

*United States v. Salter*,
  432 F.2d 697 (1st Cir. 1970) .......................................................................20

*United States v. Supreme Court of N.M.*,
  839 F.3d 888 (10th Cir. 2016) .....................................................................19

*United States v. Theodore*,
  479 F.2d 749 (4th Cir. 1973) .......................................................................11

*United States v. Zadeh*,
  820 F.3d 746 (5th Cir. 2016) .......................................................................18

*Univ. of Med. & Dentistry of New Jersey v. Corrigan*,
  347 F.3d 57 (3d Cir. 2003) ............................................................................1

## **Statutes**

8 U.S.C. § 1225 ...........................................................................................2, 8

8 U.S.C. § 1251 .............................................................................................12

26 U.S.C. § 7602 .............................................................................................7

**<u>Regulations</u>**

8 C.F.R. § 287.4 ...................................................................................................8

20 C.F.R. § 603.4 .................................................................................................15

20 C.F.R. § 603.5 .................................................................................................16

20 C.F.R. § 603.7 .................................................................................................16

71 Fed. Reg. 56830 .............................................................................................16

## I.	Introduction

In its response to the Petition, DDOL provides numerous excuses for its non-compliance with the Administrative Subpoena.  But those excuses are inconsistent with the factual record and fail to identify any defect that would render the Administrative Subpoena unenforceable.   For instance, DDOL repeatedly accuses HSI of engaging in a prohibited "fishing expedition" through its issuance of the Subpoena.  *E.g.*, D.I. 24 pp. 3, 19, 22.  As discussed below, the Administrative Subpoena is not a fishing expedition; it is part of a targeted investigation into fifteen specific businesses that were identified in tips to HSI as potentially violating the INA.  Even if the Subpoena were a mere fishing expedition as DDOL contends, that would not render it invalid or unenforceable.  Ultimately, this Court should issue an order compelling compliance with the Administrative Subpoena because it was issued within the authority of HSI, seeks information reasonably relevant to an HSI investigation that is not already within HSI's possession, was issued consistent with legal requirements, and is neither indefinite nor unduly burdensome.[1]

---

[1] DDOL does not dispute the applicable test for evaluating the Administrative Subpoena. *See Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57 (3d Cir. 2003).

1

## II.    The Administrative Subpoena Is Valid and Should Be Enforced

A. <u>HSI had the authority to issue the Administrative Subpoena</u>

Congress has empowered HSI officers to issue administrative subpoenas seeking documents related to "*any* matter which is material and relevant to the enforcement of [the INA]."  8 U.S.C. § 1225(d)(4)(A) (emphasis added).  The Supreme Court has held that this provision authorizes HSI to issue subpoenas on matters "encompass[ing] the full range of subjects covered by the [INA]."  *United States v. Minker*, 350 U.S. 179, 185-86 (1956).  The "comprehensive addition of the clause 'or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service', precludes [a] narrow[] reading" of HSI's subpoena authority.  *Id*. at 185.  Because HSI issued the Administrative Subpoena in furtherance of an investigation into violations of the INA, the Subpoena is authorized by § 1225(d)(4)(A).

Nonetheless, DDOL characterizes the Administrative Subpoena as a "fishing expedition" of the sort the Ninth Circuit rejected in *Peters v. United States*, 853 F.2d 692 (9th Cir. 1988).  D.I. 24 pp. 14-15.  As an initial matter, administrative agencies vested with investigatory power have broad discretion to require the disclosure of information concerning matters within their jurisdiction.  *See, e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (holding an agency could compel the production of information even if the action was a "fishing expedition").  And they

can do so "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.*; *see also id.* at 652 ("Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest."); *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 201 (1946) (noting that administrative subpoenas are authorized "to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one"); *Belle Fourche Pipeline Co. v. United States*, 554 F. Supp. 1350, 1360 (D. Wyo. 1983) ("[A]ny doubt as to whether it is permissible for an agency to engage in fishing expeditions, seeking evidence of both violations and agency jurisdiction over the alleged violators, was put to rest by the Supreme Court in [*Morton Salt*].").

In any event, DDOL's contention ignores a key distinction between the Administrative Subpoena and the subpoena quashed in *Peters*. There, immigration authorities served a subpoena on the manager of a labor camp housing approximately 150 families to obtain records related to any suspected undocumented aliens living at the camp. *Peters*, 853 F.2d at 694. The court expressed concern that the subpoena was directed at "unidentified targets" and referred repeatedly to what it called a "John Doe" subpoena in that it did not name any alien or employer that was suspected of being present unlawfully but instead sought information regarding all

3

residents at the camp. *Id.* at 694, 696. By contrast, here, the Administrative Subpoena names fifteen specific businesses that are the subjects of an ongoing investigation for employing undocumented aliens in violation of the INA. DDOL suggests that, because the subpoena does not name specific aliens, it is an impermissible John Doe subpoena. D.I. 24 pp. 14-15. But HSI's investigation is not focused on unnamed aliens; it is focused on named businesses. *See* Supplemental Declaration of Kimberly Caraway, Ex. D, ¶¶ 3-11.[2] That HSI might, through its worksite enforcement investigation, also identify aliens who were unlawfully present and choose to take enforcement action against the aliens as well does not convert the Subpoena into an impermissible John Doe subpoena. Once more, the Administrative Subpoena is proper under § 1225(d)(4)(A).

B. The Administrative Subpoena seeks documents relevant to HSI's investigation

DDOL argues that HSI has not made an adequate showing that the documents it seeks are relevant to a lawful investigation. D.I. 24 pp. 17-19. But HSI SA

---

[2] Even if HSI's investigation were focused on unidentified individual employees of the named businesses, subsequent Ninth Circuit case law distinguishes between an impermissible "broad and indefinite subpoena" like in *Peters* and a permissible "narrow and specific" subpoena. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012). There, DEA issued a subpoena to an energy cooperative, seeking power consumption records for three residences including the customers' full name and information. *Id.* Although the customers' identities were unknown to DEA, the Court held the subpoena proper because it related to "customer information at only these specified residences" suspected of being involved in the manufacture and distribution of controlled substances. *Id.*

Caraway's Declarations make plain why the subpoenaed records are relevant to its investigation into potential violations of the INA. The information sought may help HSI to determine whether employees are using fake social security numbers, whether employers are paying employees "under the table," whether documentation received from the employers themselves is accurate, and whether the business has a consistent workforce, all of which are relevant to whether the employers are in violation of the INA. Ex. A ¶¶ 7, 9-11[3]; Ex. D ¶¶ 8-11. The information could also help dispel suspicion of criminal activity. Ex. D ¶ 10. To help HSI determine whether the employers are unlawfully employing undocumented aliens, HSI reasonably subpoenaed what were the most recently filed wage reports.[4] Ex. D ¶ 11. This is enough to demonstrate relevance. *See Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 872-74 (3d Cir. 1990) (holding that courts have a "duty" to enforce a subpoena where the information sought is "not plainly incompetent or irrelevant to *any* lawful purpose of the [agency]" (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)); *see also Golden Valley Elec. Ass'n*, 689 F.3d at 1114 ("The information subpoenaed does not need to be relevant to a crime; in fact, it may be used to

---

[3] SA Caraway's initial declaration was attached as Exhibit A to the Petition. D.I. 2-1. Her supplemental declaration is attached as Exhibit D to this Reply.

[4] At the time of administrative subpoenas were issued, the third and fourth quarters of 2024 were the most recently filed wage reports. Ex. D ¶ 11. Given DDOL's non-compliance, this is no longer the case.

dissipate any suspicion of a crime. The information subpoenaed need only be relevant to an agency investigation."); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) ("So long as the material requested touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." (citation omitted)).

DDOL even concedes that the information is "useful" but contends that "usefulness does not establish relevance in this case because social security numbers would be useful in *any and every* ICE investigation of any employer." D.I. 24 p. 19. It is unclear why HSI should be barred from seeking information that would be relevant in every investigation. DDOL quotes *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984), to argue that the court must construe administrative authority narrowly so as not to confer "unconstrained investigative authority" on the agency. D.I. 24 p. 19. But that case, like the other EEOC cases on which DDOL relies, is specific to the limited subpoena power granted to EEOC. The EEOC's subpoena power derives from the existence of a "specific sworn charge of discrimination" and prior to enforcing an EEOC subpoena, a court is required to "satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge." *McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017) (internal quotations omitted). The full quote from *Shell Oil* reads "If the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid charge, Congress' desire to

6

prevent the Commission from exercising unconstrained investigative authority would be thwarted." 466 U.S. at 65. Congress placed no such limitations on HSI's subpoena power.[5]

In the end, rather than arguing that the information sought is not relevant or material, DDOL instead asserts that there is no nexus between the tips and the records subpoenaed. D.I. 24 p. 17. But as *Morton Salt* makes clear, no such nexus requirement limits the scope of administrative subpoena authority. HSI can seek information "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." 338 U.S. at 642-43. The businesses named in the Administrative Subpoena were the subject of tips received by HSI and HSI has chosen to investigate those allegations. Ex. D ¶¶ 9, 14. DDOL's attempt to impose a requirement that the government meet a particular (but unspecified) evidentiary threshold before issuing a records subpoena finds no support in the law and is directly contrary to *Morton Salt*.

---

[5] DDOL's reliance on *United States v. Goldman*, 637 F.2d 664 (9th Cir. 1980) fares no better. There, the court refused to enforce the subpoena because IRS could not show that information pertaining to tax years other than those specifically at issue were relevant to the IRS's investigation "for the purpose of ascertaining tax liability." *Id.* at 666 (citing 26 U.S.C. § 7602). Here, the information HSI seeks relates to the same time period during which the potential violations took place.

C. The information demanded is not within HSI's possession

DDOL concedes that the information demanded in the Administrative Subpoena is not in HSI's possession. *See* D.I. 24 p. 22 (recognizing that HSI does not have access to this data).

D. The Administrative Subpoena was issued in compliance with the law

DDOL does not seriously dispute that HSI complied with the legal requirements set out in 8 U.S.C. § 1225(d)(4) and 8 C.F.R. § 287.4 when issuing the Administrative Subpoena. The only potential argument on this front is that SA Caraway neglected to fill out Box 2 on the subpoena form. D.I. 24 p. 11 n.37. But DDOL cites nothing that suggests an Immigration Enforcement Subpoena is invalid without this information. As explained by SA Caraway, it is her practice not to complete that box so as not to reveal non-public information about her investigation. Ex. D ¶ 13.

E. The Administrative Subpoena's demand for documents is neither indefinite nor unduly burdensome

The Administrative Subpoena is neither indefinite nor broad—it is specific as to subjects (fifteen), documents (wage records), and time frame (two quarters of 2024). Nevertheless, DDOL first contends that because there were multiple possible

businesses that could have been the subject of DHS's subpoena, the Subpoena is indefinite.[6]  D.I. 24 p. 20.

To be clear, the United States is not asking for information associated with businesses not named in the Administrative Subpoena.  *See* Ex. D ¶ 21.  If DDOL was unsure about which businesses were covered by the Subpoena, it could have contacted SA Caraway prior to this action, and she would have helped clarify which businesses were the subjects of the Subpoena.  *Id.* ¶ 23.  But DDOL did nothing—it neither objected to the Subpoena nor asked for any modification or clarification.  *Id.* ¶¶17-23.  Multiple courts have held that a party cannot argue a subpoena is overly broad or burdensome after failing to seek accommodations that could have alleviated its concerns.  *See, e.g.*, *Morton Salt*, 338 U.S. at 653 ("Before the courts will hold an order seeking information reports to be arbitrarily excessive, they may expect the supplicant to have made reasonable efforts before the Commission itself to obtain reasonable conditions."); *Doe v. United States*, 253 F.3d 256, 268-69 (6th Cir. 2001) ("[The recipient] has made no attempt to reach a reasonable accommodation with the government regarding this aspect of the subpoena, an effort the Supreme Court has suggested should be expected before a court is willing to hold an administrative

---

[6] DDOL also blames SA Caraway for not providing FEINs associated with the business.  But SA Caraway does not have FEINs for the subpoenaed businesses.  Ex. D ¶ 20.  And DDOL never told SA Caraway that it would be unable to respond without FEINs.  *Id.*

subpoena overly burdensome."); *In re Subpoena Duces Tecum*, 228 F.3d 341, 350-51 (4th Cir. 2000) ("Yet, as a condition to maintaining the argument that an investigative subpoena is overly broad and oppressive, [the recipient] would have to be able to point to reasonable efforts on his behalf to reach accommodation with the government."). DDOL cannot avoid its obligation to respond to the Administrative Subpoena based on objections it never raised with HSI.

Next, DDOL characterizes HSI's subpoena as an impermissible "fishing expedition," that is overbroad and "not limited in any way." D.I. 24 pp. 21-22. DDOL is wrong. The Administrative Subpoena is narrowly tailored to HSI's investigation into whether certain Delaware businesses are engaging in employment practices that violate the INA. The Administrative Subpoena, which seeks two quarters of wage and hour information for the employees of fifteen businesses,[7] bears no resemblance to the subpoenas that were found to be overbroad in the cases DDOL cites. *See, e.g.*, *In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *6 (D. Mass. Sept. 9, 2025) (quashing a subpoena that sought "an astonishingly broad array of documents and information that are virtually unlimited in scope," including the personnel files of nearly 2,000 hospital employees regardless of their connection to the procedures being investigated); *In re Sealed*

---

[7] DDOL states that it has no records for several of these businesses. D.I. 24 p. 10; D.I. 18-1 ¶¶ 10-11.

*Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994) (enforcing subpoena issued by Office of Thrift Supervision for personal financial documents but concluding that OTS's third stated purpose to "investigate other wrongdoing, as yet unknown," was not supported by statutory authority); *United States v. Theodore*, 479 F.2d 749, 751 (4th Cir. 1973) (finding that IRS summons directed to accounting firm seeking all returns and all records relating to all clients for a three year period was overly broad). The fact that courts have sometimes quashed as overbroad subpoenas so dissimilar to the Administrative Subpoena does nothing to advance DDOL's argument.

Finally, DDOL argues that production of information in response to the Administrative Subpoena would disrupt and seriously hinder normal operations of the UC program. D.I. 24 p. 23. First, DDOL argues that disclosure would violate federal and state law. *Id.* pp. 23-26. But, as explained in more detail below, neither federal nor state unemployment compensation laws preclude DDOL from complying with the Administrative Subpoena. In fact, federal UC law expressly permits DDOL to disclose the requested information. Next, DDOL posits that disclosure would "likely" have a chilling effect on employers voluntarily filing wage reports.[8] *Id.* p. 26. But this contention is entirely speculative. As DDOL admits,

---

[8] DDOL also says that "[w]orksite raids would have a destabilizing effect on the stability of Delaware's labor market and workforce." D.I. 24 p. 26. But HSI is trying to further its investigation by seeking records, rather than by physically going

the failure to file wage reports is a violation of Delaware law and would subject a business to a variety of penalties. D.I. 14-1 ¶ 10. Nor does the fact that Delaware's UI Trust Fund was below the federal minimum solvency level from 2015 to 2021—multiple years prior to the Administrative Subpoena—suggest that DDOL's normal operations would be disrupted or hindered by disclosure of these records. D.I. 24 p. 30. DDOL cannot use its record of insolvency as a basis to avoid compliance with an unrelated aspect of federal law. Indeed, DDOL has produced similar records to law enforcement numerous times in the past without issue. *See* D.I. 15 p. 10 n.10; D.I. 24 p. 29. DDOL does not explain why producing the requested records here—particularly when it could have done so without any public disclosure had it not forced HSI to seek the Court's assistance to enforce the Administrative Subpoena—would result in such drastic consequences.[9]

---

to the businesses. Ex. D ¶ 10 & n.2. Given its concerns about destabilization, it is unclear why DDOL is seeking to prevent HSI from using less disruptive investigative techniques.

[9] DDOL attempts to distinguish this case from its long history of compliance with federal law enforcement subpoenas by suggesting that the Administrative Subpoena is unusual because it is being used for civil immigration enforcement. D.I. 24 p. 10, 12. It is unclear why DDOL believes that the Subpoena involves "solely civil immigration enforcement." D.I. 14-1 ¶ 52(b). SA Caraway is a criminal investigator and worksite enforcement investigations can lead to criminal prosecution. Ex. D ¶¶ 1, 5, 7. Further, given the broad language of the INA, HSI's subpoena power encompasses both civil and criminal proceedings, both of which are part of the Act. *See, e.g.*, 8 U.S.C. §§ 1251(a)(2) (civil deportation), 1306(d), 1325, 1326 (criminal prosecution for, respectively, use of counterfeit documents, entry without inspection, reentry after deportation). Depending on what it learns, HSI's investigation may result in criminal enforcement, civil enforcement, both, or neither. In any event, the

### III. Enforcement of the Administrative Subpoena Would Not Be an Abuse of the Court's Process

DDOL claims that HSI is trying to "skirt established UC law to pursue an intense agenda of immigration enforcement." D.I. 24 p. 32. It is DDOL's burden to show that the Administrative Subpoena was "issued for an improper purpose, such as to harass the [investigation's target] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58 (1964). "Without doubt, this burden is a heavy one." *United States v. LaSalle Nat. Bank*, 437 U.S. 298, 31 (1978). DDOL's mere disagreement with the policy choices of the current federal administration does not come close to meeting that burden.

DDOL can point to no credible evidence that shows HSI was motivated by a desire to bypass UC law or to harass the affected employers or DDOL itself. Investigating businesses for violations of the INA is a legitimate statutory purpose. *See, e.g.*, *FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980) (rejecting argument that FTC was initiating investigation into tobacco and advertising corporations for assertedly improper purpose of banning all cigarette advertising where FTC had a

---

nature of the enforcement actions that may result from HSI's investigation has no bearing on the validity of the Administrative Subpoena or DDOL's obligation to respond to it. *See, e.g.*, *Couch v. United States*, 409 U.S. 322, 326 (1973) (recognizing a special agent's authority to issue a summons in furtherance of a tax investigation with civil and possible criminal consequences and that drawing such a line would "stultify enforcement of federal law").

proper, statutorily authorized purpose for its investigation); *United States v. Michigan Dep't of Cmty. Health*, No. 1:10-MC-109, 2011 WL 2412602, at \*14 (W.D. Mich. June 9, 2011) (concluding enforcement of subpoena seeking medical marijuana records was not an abuse of court's process where "it certainly falls within the scope of the DEA's responsibility, and authority, to determine, among other things, whether those claiming the benefits of the medical marijuana statute are doing so legitimately"). So long as it does so within the framework provided by the INA, HSI's alleged purpose to "pursue an intense agenda of immigration enforcement" is not an improper one. D.I. 24 p. 32.

Throughout this litigation, DDOL has cited DHS's recent increase in worksite enforcement investigations. *See, e.g.*, D.I. 24 pp. 1-2. But DDOL may not use this motion as "a forum in which to air [its] generalized grievances about the conduct of government." *Flast v. Cohen*, 392 U.S. 83, 106 (1968). To do so would be beyond the constitutional reach of this Court. *Id.*; *see also United States v. Gomez*, 445 F. Supp. 3d 1213, 1215-16 (D. Colo. 2020) (rejecting the sheriff's arguments that "a change in the exercise of discretion that ICE's use of administrative subpoenas" supported a finding of bad faith under *Powell* as "a matter of political discussion and not an appropriate consideration for this Court").

14

Because DDOL cannot show that HSI issued the Administrative Subpoena for "some unstated, nefarious, legally inappropriate reason," the Court should reject DDOL's argument regarding bad faith. *Gomez*, 445 F. Supp. 3d at 1216.

## IV. Neither Federal nor State Unemployment Compensation Laws Excuse DDOL's Failure to Comply with the Administrative Subpoena

### A. Federal UC law permits DDOL's disclosure of the subpoenaed records

Federal unemployment compensation regulations expressly permit DDOL to provide the subpoenaed records to DHS. Pursuant to 20 C.F.R. § 603.4(b), states "must include provision for maintaining the confidentiality" of certain UC information "and must include provision for barring the disclosure of any such information, *except as provided in this part*." (emphasis added). Applicable here, disclosure of confidential UC information in response "to an official with subpoena authority is permissible" regardless of any state law provision. *Id.* § 603.5(h).[10] SA Caraway is an official with subpoena authority, and so disclosure to her is permissible under federal law.

Nevertheless, DDOL insists that disclosure under § 603.5(h) is permitted only if such disclosure is consistent "with the efficient administration of State UC law." D.I. 24 p. 24 (quoting 20 C.F.R. § 603.5). DDOL's position is directly contrary to

---

[10] In fact, a state UC agency "may choose to disclose such confidential UC information to [a local, state or federal governmental official with authority to obtain such information by subpoena under state or federal law] without the actual issuance of a subpoena." *Id.* § 603.7(b)(2).

the plain language of the regulation.  While some exceptions to the confidentiality rule do contain this additional requirement, disclosure of UC information pursuant to § 603.5(h)—*i.e.* in response to an official with subpoena authority—"is permissible . . . without such restrictions."  20 C.F.R. § 603.5.[11]  Nor can DDOL rely on the fact that it has not entered into an agreement with HSI to share information. *See* D.I. 24 p. 31.  The U.S. Department of Labor has expressly stated that the subpoena exception in 603.5(h) covers this circumstance and "pertains to situations where governmental officials have the authority to demand information under their laws, but where State UC law may not permit such disclosure . . . , thus necessitating the public official to obtain the confidential UC information through a subpoena." Federal-State Unemployment Compensation Program (UC); Confidentiality and Disclosure of State UC Information, 71 Fed. Reg. 56830, 56839 (Sept. 27, 2006). The same guidance makes clear that the subpoena provision exists precisely to address circumstances such as this.  Federal UC law presents no obstacle to DDOL's compliance with the Administrative Subpoena.

---

[11] Under federal law, if a state UC agency receives a subpoena that it does not believe fits within one of the exceptions, the state UC agency is required to "file and diligently pursue a motion to quash the subpoena."  20 C.F.R. § 603.7(a).  Although it treats its response to the Petition as though it is such a motion, DDOL has not filed a motion to quash the Administrative Subpoena.  Having declined to take the actions that federal law expressly requires of a state UC agency, and having never raised any objection with HSI, DDOL's litigation position that it was barred from responding to the Administrative Subpoena rings hollow.

B. State UC law is preempted to the extent it prevents DDOL's disclosure of the subpoenaed records

Nor can DDOL rely on restrictions in state UC law to avoid compliance with a federal subpoena. Even if DDOL could show that Delaware UC law prohibits the disclosure of the subpoenaed information, such provisions would be preempted and without effect for interfering with the enforcement of the federal Administrative Subpoena. U.S. Const., art. VI, cl. 2.

"It has long been settled that state laws that conflict with federal law are without effect." *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 479-80 (2013). "The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary Notwithstanding." *Id.* at 479 (quoting U.S. Const., Art. VI, cl. 2). "[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (citation omitted). Conflict preemption occurs when state laws conflict with federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). This includes "cases where compliance with both federal and state regulations is a physical impossibility," and "instances where the challenged state law stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress." *Id.* at 399-400 (internal quotation marks and citation omitted).

When a federal agency issues an administrative subpoena and a state law prevents the federal agency "from obtaining the records it seeks," the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *United States v. Zadeh*, 820 F.3d 746, 752 (5th Cir. 2016) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Numerous courts have held that state statutes were preempted when they posed such an obstacle to the enforcement of administrative subpoenas. *See, e.g.*, *Presley v. United States*, 895 F.3d 1284, 1292 & n.6 (11th Cir. 2018) (Florida Constitution's privacy provisions were preempted because they would "plainly interfere with the IRS's abilities to execute its summons authority and conduct its investigation"); *Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1236-37 (9th Cir. 2017) (Oregon statute requiring court order to disclose prescription monitoring information was preempted by the Controlled Substances Act); *Zadeh*, 820 F.3d at 752 (Texas statute preventing disclosure of physician-patient confidential communications was preempted by the Controlled Substances Act); *United States Dep't of Justice v. Utah Dep't of Commerce*, No. 16-cv-611, 2017 WL 3189868, at *6-*7 (D. Utah July 27, 2017) (state law prohibiting state agency from releasing prescription information without a warrant held to be preempted by CSA); *U.S. ex rel. Off. of Inspector Gen.*

18

*v. Philadelphia Hous. Auth.*, No. 10-0205, 2011 WL 382765, at \*5 (E.D. Pa. Feb. 4, 2011) (state privacy laws were preempted because they prevented the disclosure of information sought by the Office of Inspector General of the Department of Housing and Urban Development); *see also United States v. Supreme Court of N.M.*, 839 F.3d 888, 928 (10th Cir. 2016) (New Mexico rule of professional conduct limiting when federal prosecutors could issue subpoenas to attorneys was preempted).

Thus, to the extent that DDOL refuses to comply based on state law authority, this Court should hold that such authority is preempted. Because it is proper under federal law, the Administrative Subpoena should be enforced without regard to whether it comports with state law.

## V. Further Proceedings Are Unnecessary

The Court should decide this matter on the papers submitted, which include multiple sworn declarations submitted by both sides. *See* Ex. A (Caraway Decl.); Ex. D (Caraway Supp. Decl.); D.I. 14-1 (Moultrie Decl.); D.I. 18-1 (Tann Decl.); D.I. 24-1 (Cameron Decl.). An evidentiary hearing is not necessary. Nor is additional discovery.

DDOL suggests that this Court may order an evidentiary hearing or additional discovery should it have questions about the appropriateness of a subpoena. D.I. 24 p. 32. Further proceedings are appropriate only if either: (1) material government allegations are refuted by DDOL thus presenting a disputed factual issue; or (2)

DDOL's allegations of bad faith are factually supported. *United States v. Garden State Nat. Bank*, 607 F.2d 61, 71 (3d Cir. 1979); *see also Sec. & Exch. Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981) (holding that ordering further proceedings like discovery "requires the respondent to bear the initial burden of convincing the trial judge that the claimed abuse of process is not frivolous"); *Carter*, 636 F.2d at 789 ("Except in extraordinary circumstances . . . , discovery is improper in a summary subpoena enforcement proceeding." (cleaned up)); *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970) (permitting discovery only if "there remains a substantial question in the court's mind regarding the validity of the government's purpose"). Because there are no factual disputes and because DDOL has not provided evidence of bad faith, neither an evidentiary hearing nor additional discovery is appropriate in this case.

## VI.    Conclusion

The United States respectfully requests that this Court grant the United States's Petition and enforce the Administrative Subpoena.

Respectfully submitted,


TODD W. BLANCHE
Deputy Attorney General

JULIANNE E. MURRAY
Acting United States Attorney
Special Attorney

By: <u>/s/ Claudia Pare</u>
Claudia Pare
Assistant United States Attorney

*Counsel for United States*

Dated:      November 20, 2025

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Misc. No. 25-mc-322-CFC |
| | ) | |
| Delaware Department of Labor, | ) | |
| | ) | |
| *Respondent*. | ) | |

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that the United States's Reply Brief in Support of its Petition complies with the type, font, and word limitations of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware and the Court's Order dated September 29, 2025, D.I. 26, because it contains 4,946 words, excluding the parts exempted by L.R. 7.1.3(4), and it uses 14-point "Times New Roman" typeface.

Respectfully submitted,

By: */s/ Claudia Pare*
Claudia Pare
Assistant United States Attorney
*Counsel for United States*

Dated: November 20, 2025