## SUPPLEMENTAL DECLARATION OF KIMBERLY CARAWAY

I, Kimberly Caraway, declare as follows:

1.    I am employed as a Special Agent by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in Wilmington, Delaware. I am a criminal investigator, not a civil investigator. I have held this position since September 2004.

2.    The purpose of this supplemental declaration is to provide additional facts relevant to this matter not contained in my original declaration dated July 30, 2025.

3.    Part of my work at HSI includes investigations of employers involved in worksite violations and/or the exploitation of workers. These violations include, but are not limited to: the unlawful employment of aliens, transportation/smuggling of aliens, and harboring of aliens (violations of 8 U.S.C. §§ 1324a, 1324, and 1324(a)(1)(A)(iii), respectively); and human trafficking, money laundering, document fraud, and worker exploitation (violations of 18 U.S.C. §§ 1591, 1956, 1028, and 1589, respectively).

4.    Worksite enforcement investigations focus on reducing illegal employment and holding employers accountable. The target of a worksite enforcement investigation is the business, not individuals employed by the business.

1

5. These investigations lead to criminal, civil, and/or administrative judgments against employers who knowingly hire unauthorized workers, which deter employers who want to hire unauthorized workers. These investigations often entail other forms of criminal activity, such as human smuggling, document fraud, human rights abuses, and other violations linked to the employment of unauthorized workers.

6. During worksite enforcement investigations, HSI routinely requests information from local, state and federal law enforcement agencies.

7. Following a worksite enforcement investigation, if I gather enough evidence to support federal criminal prosecution, I will present the investigation to the United States Attorney's Office. If accepted for prosecution, grand jury subpoenas would be issued from that point on. Alternatively, if an investigation does not rise to the level of a federal criminal prosecution, HSI may consider pursuing a civil or administrative route. For example, HSI uses I-9 audits, civil fines, and referrals for debarment to encourage compliance with the law. Generally speaking, at the outset of a worksite enforcement investigation, I do not have enough information to determine whether I will be recommending federal criminal charges or some other non-criminal resolution.

8.    In response to an influx of tips[1] alleging the unlawful employment of illegal aliens by Delaware businesses, beginning in February 2025, I sent four administrative Immigration Enforcement Subpoenas to the Delaware Department of Labor ("DDOL") requesting wage reports for the third and fourth quarters of 2024 for a total of approximately twenty-one businesses.

9.    I issued administrative Immigration Enforcement Subpoenas because the tip line leads alleged the unlawful employment of aliens. By contrast, had the leads alleged human trafficking, I would have issued administrative Customs Summonses.

10.    The purpose of the subpoenas was to either substantiate or refute tip line leads and to do so using one of the least intrusive mechanisms available to me.[2]

11.    Wage reports would help me determine if a company is unlawfully employing undocumented aliens. An analysis of two quarters of the most recent wage reports would yield information as to who is employed by the business, how many employees the business claims to have, how much the employees earned, whether the business has a consistent workforce, etc.

---

[1] Many of these tips came through a tip line operated by ICE. Some of these tips were submitted in writing. Some other tips were provided by known HSI sources.
[2] The most intrusive mechanism would be worksite enforcement operations (referred to by others as worksite raids), which HSI is trying to avoid at this stage of the investigation.

12. If wage reports cannot be obtained, HSI will need to visit these businesses in person to conduct interviews, which would make this investigation overt and be far more disruptive to the workforce.

13. When I issue a DHS Immigration Enforcement Subpoena, I fill out certain items on the DHS Form I-138, including the summons number and my name and contact information. It is my practice to leave Box 2, which lists "Title of Proceeding," blank so as not to divulge information about covert investigations to the public. Indeed, in 21 years, I have never filled out Box 2.

14. Each of the businesses named in the subpoenas was the subject of at least one individual tip received by HSI. Some businesses would have been connected with more than one tip.

15. On April 2, 2025, Ms. Wimbush informed that "Some requests can take some time depending on amount of information found or delays can be due to the number of requests received." As a result, I cut down the number of businesses from a total of twenty-one to fifteen to make responding to the subpoenas more manageable for DDOL.

16. The final subpoena, numbered HSI-WM-2025-048065-001 and dated April 7, 2025 (the "Administrative Subpoena"), required the production of wage reports for the third and fourth quarters of 2024 for fifteen Delaware businesses.

17.     To date, there has been no response to the administrative Immigration Enforcement Subpoenas issued to DDOL.

18.     At no point prior to the start of this litigation was I informed that DDOL intended not to comply at all with the subpoenas. Similarly, at no point was I informed that DDOL could not comply with the subpoenas based upon the information that I had provided. And at no point did DDOL ask to try and limit the subpoena, nor did they seek any accommodations to alleviate any problems with compliance. Finally, DDOL never communicated that it could not find records for some of the businesses listed on the subpoenas.[3]

19.     For example, I was never asked by DDOL to clarify or verify names/addresses of Delaware businesses listed on the subpoena.

20.     Although Ms. Wimbush requested that I include the FEINs (or Federal Employer Identification Numbers), I provided file numbers associated with the business instead because HSI has no mechanism to covertly obtain FEIN numbers for businesses. Ms. Wimbush did not tell me DDOL would not be able to provide the requested records without FEINs.

---

[3] This fact is significant because if the business is not filing wages at all, then maybe there is some credence to the tip line lead. In addition, an HSI investigation could potentially force a business into full compliance with federal and Delaware law, thus being a benefit to DDOL by ultimately adding revenue to the UI Trust Fund.

21.    I do not want to (nor should I) receive records that are not directly related to the targets or subjects of the investigation.

22.    When DDOL was still communicating with me, I tried to be accommodating. For example, I asked for the information as it became available, meaning one business at a time.

23.    Had DDOL brought any concerns or problems to me, I could have worked with DDOL to resolve them. For example, if they indicated they were struggling to find associated records, I could have helped narrow the scope or helped figure out which was the correct entity. I have corresponded with other subpoena recipients in the past to clarify the scope of a subpoena, including, for example with the Pennsylvania Department of Labor & Industry when a business has used several addresses and/or fictious names.

24.    When information is received in response to subpoenas (including from state agencies like DDOL), HSI secures that information and maintains its confidentiality. Additionally, I have taken the mandatory training on Records Management and Protecting Personal Information annually for 21 years. I will safeguard personally identifiable information obtained from DDOL and maintain HSI standards of record maintenance, storage, and destruction.

25.    This declaration is based upon my personal and professional knowledge, information obtained from other individuals employed by HSI, and

6

information obtained from various records and systems maintained by DHS. I provide this declaration based on the best of my knowledge, information, belief, and reasonable inquiry for the above captioned case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _19th_ day of _November_____, 2025.


_____
KIMBERLY CARAWAY
Special Agent, Homeland Security Investigations
Wilmington, Delaware

7