# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Misc. No. 25-mc-322-CFC |
| | ) | |
| Delaware Department of Labor, | ) | |
| | ) | |
| Respondent. | ) | |

## UNITED STATES OF AMERICA'S
## RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION TO
## TO STAY PROCEEDINGS

Benjamin L. Wallace
United States Attorney

Claudia Pare
Assistant United States Attorney

*Counsel for United States*

Dated:　　April 24, 2026

## I.    NATURE AND STAGE OF THE PROCEEDINGS

For over a year, the United States has sought to obtain records from the Delaware Department of Labor ("DDOL") relating to the subjects of an ongoing, covert investigation conducted by Homeland Security Investigations ("HSI").  Last summer, the United States sought the assistance of this Court and filed a Petition to enforce HSI's Administrative Subpoena.  On April 13, 2026, this Court granted the United States's Petition.  Instead of producing the documents demanded by the Administrative Subpoena, as ordered by this Court, DDOL waited for more than a week, and then noticed its appeal and filed a motion to stay pending appeal.  The United States opposes DDOL's stay motion.

## II.   SUMMARY OF THE ARGUMENT

In its stay motion, DDOL rehashes arguments already rejected by this Court.  DDOL first argues that it is likely to succeed on appeal because—according to DDOL—state law that stands as an obstacle to a lawful federal subpoena is not preempted by federal law.  But for the reasons laid out in this Court's opinion, DDOL is wrong.  For the same reasons the Court explained in its opinion, DDOL is unlikely to succeed on the merits of the appeal.  DDOL then argues that it is likely to suffer

1

irreparable harm because a state employee claims (without evidence) that the production of these documents would impede the administration of the unemployment system.  But this "harm" is entirely speculative and largely a creation of DDOL's own (in)actions.  Because DDOL has not met the prerequisites for the issuance of a stay, its motion should be denied.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

Since February 2025, HSI has been investigating various Delaware businesses to determine whether they are employing undocumented aliens in violation of the INA, including 8 U.S.C. § 1324a(a)(1).  D.I. 2-1 ¶ 6.  As part of its investigation, on April 7, 2025, HSI issued and served Department of Homeland Security Immigration Enforcement Subpoena Number HSI-WM-2025-048065-001 (the "Administrative Subpoena"), which required the production of wage reports for the third and fourth quarters of 2024 for fifteen specified Delaware businesses by April 18, 2025.  *Id.* ¶ 19; *see also* D.I. 35 at 3.

DDOL ignored the Administrative Subpoena.  D.I. 35  at 4.  And on July 31, 2025, the United States petitioned this Court to enforce the Administrative Subpoena.  *Id.*

Once the Petition was fully briefed, and following oral argument, the Court concluded that HSI's investigation had a legitimate purpose, that the Administrative Subpoena sought information relevant to its investigation, that the government was not already in the possession of the information covered by the Subpoena, that the government complied with the administrative steps required by statute, and that the subpoena was not unreasonably broad or burdensome. *Id.* at 8-17. As a result, the Court held that HSI's Administrative Subpoena was valid and enforceable. *Id.* at 23. The Court ordered that the United States's Petition was granted on April 13, 2026. D.I. 36.

That same day, counsel for DDOL contacted the undersigned noting that the Court did not provide a specific date for production, indicating that DDOL was considering filing a notice of appeal and motion to stay enforcement pending appeal, and requesting a production date of April 21, 2026, absent a stay. The undersigned agreed to the April 21 production date.

DDOL then waited more than a week before docketing its Notice of Appeal on April 21, 2026. D.I. 37. That same day, DDOL moved for a stay of all proceedings pending appeal. D.I. 38. Following the stay

motion, the undersigned contacted counsel for DDOL asking for an update on when DDOL planned to produce documents in response to the subpoena. Counsel for DDOL responded that it would be in touch following resolution of the stay motion and any subsequent motion to the Third Circuit.

## IV.   LEGAL STANDARD

A stay pending appeal is an "extraordinary remedy." *United States v. Crosby-Avant*, Crim. Act. No. 23-71-MN, 2023 WL 6848048, at *2 (D. Del. Oct. 17, 2023) (quoting *El v. Marino*, 722 F. App'x 262, 267 (3d Cir. 2018)). The factors governing the issuance of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors are "the most critical." *Nken v. Holder*, 556 U.S. 418, 434  (2009).

As to the first factor, a strong showing of the likelihood of success exists if there is "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en

banc).  "While it is not enough that the chance of success on the merits be better than negligible, . . . the likelihood of winning on appeal need not be more likely than not."  *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015) (cleaned up).

To satisfy the second factor, the movant must demonstrate that irreparable injury is "*likely* not merely possible" in the absence of a stay. *Id.* (alteration in original) (citation omitted).  The Third Circuit has described that "likely means more apt to occur than not."  *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019).

If the movant has satisfied the first two factors, courts then assess the harm to the opposing parties and weigh the public interest.  *Id.*  "In particular, courts balance the harms by weighing the likely harm to the movant absent a stay, the second factor, against the likely harm to stay opponents if the stay is granted, the third factor."  *Id.*  "Courts also evaluate where the public interest lies, the fourth factor, which calls for

gauging consequences beyond the immediate parties." *Id.* (citation omitted).

The Third Circuit has adopted a "sliding-scale" approach to determining how strong a case a stay movant must show. *Id.* "The more likely the movant is to win, the less heavily need the balance of harms weigh in its favor; the less likely it is to win, the more heavily need the balance of harms weigh in its favor." *Id.* (cleaned up).

In sum, the analysis proceeds as follows:

> Did the applicant make a sufficient showing that (1) it can win on the merits—significantly better than negligible but not greater than 50%—*and* (2) will suffer irreparable harm absent a stay?  If it has, we balance the relative harms considering all four factors using a sliding-scale approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id.* (cleaned up)

## V.   ARGUMENT

### A. The Court Should Deny Respondent's Motion to Stay.

Respondent seeks a stay of this enforcement proceeding pending appeal to the Third Circuit.  DDOL's motion should be denied because DDOL is unlikely to succeed on the merits and is unlikely to suffer irreparable injury absent a stay.

6

i.  <u>DDOL is not likely to succeed on the merits.</u>

DDOL contends that it is likely to succeed on appeal because the Court made an error in relation to its ruling on preemption.  DDOL first contends Court's decision failed to address DDOL's argument that "the Supremacy Clause does not preempt because the unemployment insurance system is premised on a federal-state partnership that invited Delaware to enact the type of confidentiality laws cited by Respondent." *See* D.I. 38 ¶ 6.  DDOL then cites for the first time case law involving field preemption.[1]  *Id.*

Although DDOL cites the portion of the Court's opinion in which its preemption argument is addressed, D.I. 38 ¶ 4 (citing D.I. 35 at 20-22),

---

[1] As an initial matter, the Third Circuit will not review arguments made for the first time on appeal absent exceptional circumstances.  *See, e.g.*, *United States v. Sok*, 115 F.4th 251, 264 n.11 (3d Cir. 2024) ("[W]e can review untimely appellate arguments—*i.e.*, arguments raised for the first time on appeal or raised on appeal only after an opening appellate brief—if there are extraordinary circumstances to do so.").  Thus, DDOL cannot demonstrate a likelihood of success on appeal by raising new arguments in its stay motion.  Moreover, to the extent DDOL cites a footnote in its briefing and claims the Court ignored an argument, this Court has repeatedly held that "passing references" in footnotes are insufficient to raise an issue.  *E.g.*, *In re Chemours Co. Sec. Litig.*, 587 F. Supp. 3d 143, 154 n.2 (D. Del. 2022) (Connolly, C.J.) (quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202-03 (3d Cir. 2004)).  Rather "arguments raised in passing (such as, in a footnote), but not squarely argued, are

its Motion fails to engage with the Court's actual holding.  In its opinion, the Court held that Delaware's state law privacy protections were preempted not by the federal unemployment compensation regulations in Part 603, but by the subpoena power granted to HHS in the INA.

> But the relevant question is not whether *Part 603* requires disclosure. The relevant question here is whether *a subpoena lawfully issued pursuant to § 1225(d)(4)(A) and § 287.4* requires disclosure.  The answer to that question is clearly yes.  And § 603.5(h) makes it equally clear that the confidentiality requirements of Part 603 do not override or impede that subpoena power.  These are not close calls.

D.I. 35 at 20.  DDOL is simply incorrect that the Court "did not address" its argument.  D.I. 38 ¶ 6.  Rather, the Court concluded that DDOL's argument did not address "the relevant question" regarding preemption. Nothing in DDOL's motion suggests that the Court was wrong to find preemption on the basis it actually applied.

    In any event, DDOL is wrong as a matter of law.  As correctly laid out by the Court, 20 C.F.R. Part 603 was promulgated by the U.S. Department of Labor "to implement the requirements of Federal [unemployment compensation ("UC")] law concerning the confidentiality

---

considered waived." *Id.* (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)).

and disclosure of UC information." D.I. 35 at 18. Under federal law, states must prevent the disclosure of UC information, including wage reports, "except as provided" in Part 603. *Id.* In turn, § 603.5(h) provides that states may disclose confidential UC information in response to an official subpoena or to a court order. *Id.* at 19. They may even choose to disclose this information to an official *without* a subpoena. *Id.* The exception in § 603.5(h) was specifically intended to cover situations—like here—"where governmental officials have the authority to demand information under their laws, but where State UC law may not permit such disclosure." *Id.* at 20 n.10. Thus, even though a state may adopt stricter UC confidentiality requirements than federal law, § 603 does not give state agencies license to decline to respond to validly issued subpoenas in the name of state UC law. *Id.* at 20.

Nor does state law give DDOL a veto power over validly issued subpoenas. To the contrary, because Delaware law conflicts with federal law, the Delaware law is "without effect," *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 479-80 (2013), and "must yield" to federal law, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992). As this Court's opinion reflects, there is abundant case law holding that state

9

statutes and constitutional provisions are preempted when they prevent compliance with a federal administrative subpoena.  D.I. 35 at 20-21. DDOL's failure to engage with that case law dooms their suggestion that they are likely to succeed on the merits.

Finally, DDOL contends that it is likely to succeed because the government has available to it alternative means to obtain the information it seeks that would not raise concerns under the Supremacy Clause.  D.I. 38 ¶ 9.  But the availability of alternative means is not at all relevant to the preemption analysis.  DDOL cites no authority suggesting that, where the federal government has alternative mechanisms to obtain the information, it is somehow limited in its ability to use mechanisms that potentially override state regulations.[2]

In sum, contrary to its assertion otherwise, D.I. 38 ¶ 8, DDOL does not have a reasonable chance of success on its preemption argument.  As the Court has already found, this is not a close call.  D.I. 35 at 20.

---

[2] The one case that DDOL does cite, *Ford Motor Co. v. Ins. Com'r of Com. of Pa.*, 874 F.2d 926, 936 (3d Cir. 1989), addresses field preemption of an entire state regulatory scheme.  As discussed above, not only is DDOL's field preemption argument waived, it fails to engage with the actual basis on which this Court found Delaware's regulations to be preempted.

ii.  <u>DDOL will not suffer irreparable harm absent a stay.</u>

DDOL next contends there is a substantial likelihood it will be harmed absent a stay because "the Secretary of Labor believes that doing so would be inconsistent with, or would impede, the administration of the unemployment insurance system."  D.I. 38 ¶ 10.  This is the same speculative argument raised to and rejected by the Court.  *See* D.I. 35 at 12-17.  Although the Court has already found that this "novel theory fails on many fronts," *id.* at 13, DDOL devotes all of three sentences to its argument that it will suffer irreparable harm absent a stay, D.I. 38 ¶ 10. For all the reasons already articulated by the Court, DDOL fails to carry its burden to show that it will be irreparably harmed by the production of documents in this case.

\* \* \*

Because DDOL has not demonstrated either of the first two factors required for issuing a stay, DDOL's motion should be denied without further analysis.[3]  *S.S. Body Armor I*, 927 F.3d at 772.

---

[3] Even if DDOL had shown the first two factors met, the balance of harms weighs against a stay.  HSI's investigation has been pending for over a year.  And the government's ability to conduct lawful investigations is being impaired by DDOL's continued refusal to provide the requested documentation.

11

**B. DDOL Cannot Delay Compliance While It Seeks a Stay.**

It has now been more than 10 days since the Court granted the United States's Petition seeking enforcement of the Administrative Subpoena. In that time, DDOL has neither complied with the Court's Order nor obtained a stay. Rather, DDOL is proceeding as though its Notice of Appeal and its Motion to Stay Pending Appeal relieve it of its duty to comply with the Order, at least until such time as the Court (and presumably the Court of Appeals) denies its request for a stay. Not so.

"If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975)); *accord Harris v. City of Philadelphia*, 47 F.3d 1333, 1337 (3d Cir. 1995). DDOL has made no attempt to "comply promptly" with this Court's Order and does not appear to have any intention to do so. It waited more than a week (and until the date when, absent a stay, it had proposed to produce the responsive documents) before seeking a stay. Nor did its stay motion seek relief on an expedited basis or, indeed, express any urgency at all about the timing of a stay. Further, DDOL has confirmed by email that the documents are mostly ready for

12

production and that it anticipates that they can be produced quickly, but only after its stay motions are denied. *See* Exhibit 1 (April 22, 2026, e-mail from J.K. Aaronson to C. Pare). DDOL should not be permitted to treat a motion for a stay—particularly, as discussed above, one that simply rehashes arguments this Court has already squarely rejected—as a license to delay its already-ordered compliance with the Administrative Subpoena indefinitely.

Accordingly, the United States requests that, if the Court denies DDOL's stay motion, it also order compliance with the Administrative Subpoena by a date certain. Given that DDOL has already confirmed that the documents are largely ready for production, the United States submits that 5 days would be an adequate period for compliance and would permit DDOL, should it choose to do so, to seek a stay from the Third Circuit on an expedited basis.

13

## VI.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny DDOL's motion.

Respectfully submitted,

Benjamin L. Wallace
United States Attorney

By: */s/ Claudia Pare*
Claudia Pare
Assistant United States Attorney

*Counsel for United States*

Dated:      April 24, 2026