## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,     )
     )
     Petitioner,     )
     )
v.     )     M.A. No. 25-322-CFC
     )
DELAWARE DEPARTMENT OF     )
LABOR,     )
     )
     Respondent.     )

## REPLY IN SUPPORT OF MOTION FOR
## STAY PENDING APPEAL

All four factors in the Third Circuit's stay analysis favor a stay here. As discussed in Respondent's Motion to Stay Pending Appeal (D.I. 38, "Motion"), this case presents important constitutional questions of federalism, privacy, and policy concerns, and a stay is necessary to prevent irreparable harm that would occur if Respondent were required to comply with the Subpoena (D.I. 4) before its appeal is resolved. After all, "[o]nce the information that is sought has been provided to Petitioner, there would be no remedy that could be provided through an appeal." Motion at 7.

Granting a stay would also be consistent with a recent decision from a sister court in this Circuit resolving similar issues. Yesterday, the Eastern District of Pennsylvania granted a stay pending appeal of an order enforcing an administrative subpoena served by the Equal Employment Opportunity Commission on the

1

University of Pennsylvania in connection with a Title VII investigation. The court there explained that "a stay will allow the Third Circuit Court of Appeals to address in an orderly manner a matter of great public interest." *EEOC v. Trs. of Univ. of Pa.*, No. 2:25-6502-GJP, D.I. 67 (Slip Op.), at 1 (E.D. Pa. Apr. 27, 2026) (Ex. 1).

## I. Respondent Has a Substantial Likelihood of Success on the Merits.

Respondent has a substantial likelihood of prevailing on its arguments that Delaware laws are not preempted by the Supremacy Clause and that they would not permit the disclosures sought by the Subpoena.

Petitioner alternately chides Respondent for arguing it has a likelihood of success on appeal on arguments the Court rejected (D.I. 39, "Response" at 1)—as every appellant is required to do—and for raising new arguments in its Motion (Response at 7 n.1). Contrary to Petitioner's claim, Respondent did not relegate to a footnote its argument that federal law invited states to enact the type of strict confidentiality laws that Delaware passed. Rather, Respondent has referred to the relevant federal regulations at the core of this argument from as early as the Rule to Show Cause hearing on August 6, 2025, D.I. 11, six days after the government's enforcement motion was filed, and in Respondent's Response to the Motion to Enforce. *See* D.I. 24 at 27-28 (citing 20 C.F.R. §603.4(c), which mandates States to pass such confidentiality laws, and in turn refers to paragraph (b) of the same regulation, which further describes confidentiality obligations).

2

In addition, Counsel discussed this argument at the hearing on the Motion, as recorded in the transcript at page 42:

> (**MS. AARONSON:**) And part C then refers to state law. And state law must contain provisions that are interpreted and apply consistently with subpart (b), meaning that it would have a method of administration that's reasonably calculated to ensure the full payment.
>
> When we look at the regs themselves, the 2006 regs at Page 56831, the regs say that the department appreciates that states have valid reasons for maintaining UC confidentiality laws.
>
> **THE COURT:** Wait. So where are you now?
>
> **MS. AARONSON:** In the 2006 regs.
>
> **THE COURT:** So page what? Because I have them up. I only have 15 pages. What page did you have?
>
> MS. AARONSON: 56831.
>
> **THE COURT:** Okay. 56831, I'm there.
>
> **MS. AARONSON:** The regs provide that the department actually recognizes that states have valid reasons for maintaining UC confidentiality laws that are stricter than those required by the rule. And on balance, the Federal Rules serves to enhance confidentiality requirements by making disclosures subject to the minimum requirements of the rule while permitting states to provide additional protection.[1]

While Respondent may not have used the words "field preemption" in its brief, it discussed the substance of this argument in its briefing and at oral argument. As such, Respondent's Supremacy Clause argument was properly presented to this Court over the course of the litigation.

---

[1] Transcript of April 1, 2026 Hearing (Ex. 2, "Transcript") at 42.

3

Moreover, Respondent's Supremacy Clause argument has the kind of likelihood of success on appeal that warrants granting a stay pending full consideration of the weighty issues it implicates. *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (describing the standard as "significantly better than negligible but not greater than 50%"). Contrary to Petitioner's oversimplified characterization, Respondent does not contend that the Court "did not address" its Supremacy Clause argument wholesale. Response at 8. Rather, Respondent's argument has always been that the preemption analysis is more complex than Petitioner's pat conclusion that "because Delaware law conflicts with federal law, the Delaware law is 'without effect.'" Response at 9. Rather, "the intent of Congress is the 'ultimate touchstone' of preemption analysis." *Lewis v. Alexander*, 685 F.3d 325, 346 (3d Cir. 2012) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). And here, evaluating that intent necessitates reconciling, on the one hand, Congress's invitation for states to enact privacy regulations as part of the complex federal-state partnership implementing social security and unemployment programs, with any perceived intent to preempt such privacy provisions through the Immigration and Naturalization Act (INA) subpoena provision, on the other. Motion at 3-5. It would make little sense to conclude that Congress intended to preempt a scheme that it invited Respondent to participate in, using legislation governing a distinct field of law, without so much as an acknowledgment of the vast implications of its actions.

After all, courts must presume that "Congress is aware of existing law when it passes legislation." *Hall v. United States*, 566 U.S. 506, 516 (2012). At minimum, this is a weighty question of first impression in this Circuit, on which Respondent has made a showing that it has at least a "substantial" case on appeal. *Revel*, 802 F.3d at 571.

Respondent also has substantial likelihood of success on its argument that Delaware law on the confidentiality of unemployment compensation information is not preempted because Congress specifically provided an alternate path for DHS to obtain the information it seeks through the Subpoena—one that would not bring Federal law into conflict with Delaware law. Contrary to Petitioner's unsupported assertion, (Response at 11), the existence of alternative statutory pathways to collect information *is* relevant to the core preemption inquiry—that of Congressional intent. *Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) ("Preemption fundamentally is a question of congressional intent …"). Courts discern congressional intent from the language of the allegedly preemptive provision "*and the 'statutory framework' surrounding it.*" *Medtronic*, 518 U.S. at 486 (emphasis added). Here, the fact that Congress made available in the INA an alternative mechanism to obtain information—and that too, one that does not interfere with State law—sheds light on whether it intended to preempt state unemployment compensation insurance privacy laws with the INA's subpoena provision.

Further, there is no basis to limit, as Petitioner suggests, the principle articulated by *Ford Motor Co. v. Ins. Com'r of Com. of Pa.*, 874 F.2d 926, 936 (3d Cir. 1989), that "preemption analysis should be 'tempered by the conviction that the proper approach is to reconcile the operation of both statutory schemes with one another rather than holding one completely ousted,'" only to instances that concern preemption of an entire state regulatory scheme. *Cf.* Response at 10 n.2. Indeed, the U.S. Supreme Court decision on which the *Ford* Court based that principle concerned preemption not of an entire state regulatory scheme, but preemption only of the arbitration provisions of the much broader California Labor Code. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 125 (1973).

In *Ford*, the Court was concerned that application of the statute at issue would "would frustrate the intent of the federal legislation" at issue. *Ford Motor Co.*, 874 F.2d at 938. That is not the case here, where DHS has a statutory right to obtain I-9s that include the information DHS seeks through the Subpoena. Respondent has a substantial likelihood of prevailing on its argument that Delaware law should not be preempted where requiring DHS to follow the statutory process Congress created for the specific purpose of making this information available would avoid a conflict between state and federal law. Indeed, requiring DHS to follow those procedures would support, not frustrate, legislative intent.

## II.      Respondent Will Suffer Irreparable Harm In the Absence of a Stay

Even if the Court disagrees that Respondent has a substantial likelihood of success on the merits, a stay pending appeal is appropriate because Respondent has demonstrated that it will suffer irreparable harm in the absence of a stay.

In *EEOC*, the court determined that even though the applicant did "not have a strong chance of success on the merits," the irreparable harm resulting from the "initial disclosure of information" to the government and the public interest in "orderly resolution of [the] case through the ordinary appellate process" justified a stay. Slip Op. at 3, 11, 12.[2]

Here, Respondent has argued that the very same irreparable harm at issue in *EEOC* will occur in the absence of a stay. Motion at 7. Petitioner did not respond to this argument, even to the degree that was found inadequate in *EEOC*. Irreparable harm is harm "that cannot be prevented or fully rectified by the tribunal's final decision." *Revel*, 802 F.3d at 571 (citation omitted). If the Subpoena is enforced before Respondent's appeal is resolved, the toothpaste will be out of the tube, and no adequate compensatory or other corrective relief will be available at a later date because Petitioner will already have the information it seeks through the Subpoena.

---

[2] *See id.* at 11 ("Penn asserts a successful appeal would not prevent or fully rectify its disclosure of the affected employees' information to the EEOC. The EEOC responds that if respondents prevail on appeal, the Third Circuit Court of Appeals can order the EEOC to destroy the information Penn turned over. But that would not prevent or fully rectify the initial disclosure of the information to the EEOC.")

The loss of the availability of an adequate remedy via appeal is irreparable harm that is certain to occur in the absence of a stay.

Respondent also argues that it will suffer irreparable harm in the absence of a stay where compliance with the Subpoena would not be permitted by state law. That is because the Secretary of Labor believes that doing so would be inconsistent with, or would impede, the administration of the unemployment insurance system, and would put its financial viability at risk because it could result in employers not filing reports or paying their assessments. Motion at 2-6. That belief is not merely speculative. Indeed, the Court's observations at oral argument illustrate why the Secretary of Labor would reasonably have cause for such concern:

> **THE COURT:** Well, you know, it also could be that, when I talked earlier about the evisceration of norms. But when law enforcement agencies disregard the norms that have historically guided it and do things that are questioned in the eyes of many, they not only undermine their reputations, but they may make citizens more concerned about disseminating information to those law enforcement agencies.[3]

Given that the Court identified circumstances that could lead citizens to be more concerned about disseminating information to law enforcement agencies, the Appellate court could determine it was improper to dismiss the Secretary of Labor's concerns and that accordingly there would be irreparable harm from ordering compliance with the Subpoena before full consideration of the merits of the appeal.

---

[3] Transcript at 69.

### III.    The Equities Favor Granting a Stay

By contrast Petitioner has not established that it will be significantly harmed by granting a stay. Its only argument on this factor is that the DHS investigation has been open for more than a year. But here, again, DHS has alternate statutory means to obtain the information that it seeks through the Subpoena, and it has not pursued the information it seeks through those means during the pendency of this case. Petitioner does not address Respondent's argument that the public interest, and particularly the interests of those businesses and individuals whose information is sought by the Subpoena, weighs in favor of granting a stay pending appeal.

### IV.    Petitioner's Request for an Order Requiring Compliance with the Subpoena by a Date Certain Is Contrary to Correspondence Between Counsel.

In support of its request for a date certain by which Respondent must comply with the Subpoena, Petitioner submitted a single email from Respondent's counsel to Petitioner's Counsel. D.I. 39-1. But that email was only one, and not the last, of several emails exchanged between counsel concerning timing. Those emails, attached as Exhibits 3 and 4, reflect an agreement that Petitioner would not require production until after any motions to stay in this Court or, if it becomes necessary, in the Third Circuit, were resolved.

Counsel first reached agreement on a production date of April 21 that would apply only if Respondent decided not to file an appeal or a motion to stay. Ex. 3 at

9

2-3. When Respondent did, in fact, file a notice of appeal and a motion to stay, Respondent's counsel committed to be "in touch promptly following the resolution of that motion and any subsequent motion to the Third Circuit, should one become necessary." Ex. 3 at 1. Counsel for Petitioner responded to ask whether "assuming any stay motions are denied, can you please confirm that DDOL will be prepared to produce the subpoenaed materials in short order?" *Id.* Counsel for Respondent then stated in the email that Petitioner attached to its Response that, "[i]f the stay motions are denied, we believe the requested documents are mostly ready for production. There may be a few minor questions for clarification but we anticipate a quick turnaround." Ex. 4. The correspondence leading up to that email, and that email itself concern Respondent's contemplated production in the event that "motions," to stay in up to two courts have been denied. And it reflects counsel for Petitioner's identical understanding. Ex. 4 (responding affirmatively with "Great. Thanks Kate!"). As such, the full course of the email exchange reflects a mutual agreement between the parties that production would not be required while any motions to stay are pending—either in this Court or in the Third Circuit.

## V.    **Conclusion**

For the reasons explained in the Motion and herein, Respondent request that the Court grant the Motion for a Stay Pending Appeal. Respondent further requests that the Court deny Petitioner's request for an order that Respondent comply with

the Subpoena by a date certain in favor of counsel's agreement reflected in Exhibits

3 and 4 hereto.

Respectfully submitted,

Dated: April 28, 2026   DELAWARE DEPARTMENT OF JUSTICE

          /s/ *Jennifer Kate Aaronson*
          Jennifer Kate Aaronson (DE Bar No. 3478)
          Ian R. Liston (DE Bar No. 5507)
          820 N. French Street
          Wilmington, DE 19801
          (302) 683-8803
          jennifer.aaronson@delaware.gov
          *Counsel for Delaware Department of Labor*

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2026, a copy of the foregoing documents were served on counsel of record via the District of Delaware's electronic filing system.

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)

13

## CERTIFICATE OF TYPE, FONT, AND WORD LIMITATIONS

The undersigned hereby certifies that the foregoing reply complies with the Court's November 10, 2022 Standing Order Regarding Briefing in All Cases. The Reply is typed in 14-point Times New Roman font, and contains 2,427 words, exclusive of case caption and signature blocks.

/s/ *Ian R. Liston*
Ian R. Liston (DE Bar No. 5507)