IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

                                  Petitioner,

             v.

DELAWARE DEPARTMENT OF
LABOR,

                             Respondent.

Miscellaneous Action
No. 25-322-CFC

---

Claudia L. Pare, Assistant United States Attorney, THE UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF DELAWARE, Wilmington, Delaware

    *Counsel for Petitioner*

Jennifer Kate Aaronson and Ian R. Liston, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

    *Counsel for Respondent*

**<u>MEMORANDUM OPINION</u>**

May 8, 2026
Wilmington, Delaware

_Colm F. Connolly_

COLM F. CONNOLLY
CHIEF JUDGE

On April 13, 2026, I issued a Memorandum Opinion and Order granting the Government's Petition (D.I. 2) to enforce a Department of Homeland Security (DHS) administrative subpoena over the objections of Respondent Delaware Department of Labor (DDOL). D.I. 35; D.I. 36. I also issued that day an Order denying DDOL's Motion to Unseal Exhibit and to Stay Proceedings (D.I. 14). D.I. 34. DDOL filed a notice of appeal of the Opinion and Orders on April 21, 2026. D.I. 37. Pending before me is DDOL's motion "for a stay of all proceedings in this action" pending that appeal. D.I. 38 at 1.[1]

## I.

A stay pending appeal is an "extraordinary remedy." *El v. Marino*, 722 F. App'x 262, 267 (3d Cir. 2018). As the Supreme Court held in *Nken v. Holder*, 556 U.S. 418 (2009), "[a] stay [pending appeal] is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial

---

[1] According to DDOL's Proposed Order filed with its motion, DDOL also seeks a stay of the execution of my Order denying DDOL's motion to unseal. *See* D.I. 38-1 at 1. Because my denial of the motion to unseal preserved the status quo, I will deny DDOL's pending motion insofar as it seeks a stay of the execution of that Order. *See Nken v. Holder*, 556 U.S. 418, 429 (2009) ("A stay simply suspend[s] judicial alteration of the status quo . . . .") (alteration in the original) (internal quotation marks and citation omitted).

discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 433 (last alteration in the original) (internal quotation marks and citations omitted). Because DDOL is the party seeking a stay, it "bears the burden of showing that the circumstances justify an exercise of [my] discretion" here. *Id.* at 433–34.

"The fact that the issuance of a stay is left to [my] discretion does not mean that no legal standard governs" the resolution of DDOL's motion. *Id.* at 434 (internal quotation marks and citation omitted). A district court's exercise of discretion must always be "guided by sound legal principles." *Id.* When it comes to deciding a motion to stay pending an appeal, the guiding legal principles

> have been distilled into consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

"The first two factors . . . are the most critical." *Id.* With respect to the first factor, a showing "that the chance of success on the merits [is] 'better than negligible'" is "not enough" to justify a stay. *Id.* (citation omitted). That said, "the likelihood of winning on appeal need not be 'more likely than not.'" *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015) (citation omitted). Rather, under Third

2

Circuit law, the movant must establish "a reasonable chance, or probability, of winning." *Id.* at 568–69.

As for the second factor, the movant must demonstrate that the absence of a stay will "likely" and not just "possibly" result in "an injury that is neither remote nor speculative, but actual and imminent." *Id.* at 569, 571. Unlike the movant's burden to show a likelihood of success on the merits, to show that the alleged irreparable harm is "likely" to occur, the movant must establish that the harm is "more apt to occur than not" absent a stay. *Id.* at 569.

"[I]f the movant does not make the requisite showings on either of [the] first two factors, . . . the stay should be denied without further analysis." *Id.* at 571 (brackets and citation omitted); *see also id.* ("[T]he analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach.") (emphasis in the original) (internal quotation marks and citation omitted). Thus,

> if "the chance of success on the merits is only better than negligible" and the "[likelihood] of irreparable injury" is low, a stay movant's request fails. Likewise, "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay

3

is granted, it is still required to show, at a minimum, 'serious questions going to the merits.'"

*Id.* at 570 (brackets and citations omitted).

## II.

DDOL has not made a strong showing that it is likely to succeed on the merits of its appeal. Nor has it demonstrated that it is likely to suffer irreparable harm in the absence of a stay.

## A.

DDOL says that it has a reasonable chance of succeeding in its appeal for two reasons, neither of which passes muster.

## 1.

DDOL argues first that it has a reasonable chance of success because I "did not address" in the Memorandum Opinion its argument that U.S. Department of Labor (USDOL) regulations codified in 20 C.F.R. Part 603 "contemplated and invited" Delaware to enact the unemployment compensation (UC) confidentiality laws DDOL relied on in refusing to comply with the administrative subpoena and that those confidentiality laws are therefore not preempted by federal law. D.I. 38 ¶¶ 6–7. In support of this argument, DDOL cites for the first time in this action field preemption cases—that is, cases that address whether a federal statutory scheme occupies a field of law so comprehensively that it implicitly preempts a state statutory scheme in the same field. *See* D.I. 38 ¶¶ 5–9. Quoting from those

4

cases, DDOL says that "the proper approach" in "a preemption analysis should be . . . to reconcile the operation of both statutory schemes with one another rather than holding one completely ousted," and that Part 603's "invit[ation]" to states to enact UC confidentiality laws that are stricter than the confidentiality provisions expressly set forth in Part 603 "is inconsistent with an inference of intent to preclude state laws governing the permissible disclosure of unemployment compensation information."  D.I. 38 ¶ 5 (internal quotation marks omitted) (quoting *Ford Motor Co. v. Ins. Comm'r of Pa.*, 874 F.2d 926, 936 (3d Cir. 1989)); D.I. 38 ¶ 6 (quoting *Lozano v. City of Hazleton*, 724 F.3d 297, 303 (3d Cir. 2013), for the proposition that "[f]ield pre-emption occurs when Congress intends federal law to occupy the field"); *see also* D.I. 38 ¶ 6 (quoting *Lozano* for the proposition that "[t]he intent to displace state law altogether can be inferred from a framework of regulation so pervasive . . . that Congress left no room for the States to supplement it or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject") (omissions in the original) (internal quotation marks and citation omitted).

To be sure, I did not address this argument in the Memorandum Opinion. And for good reason: DDOL did not make the argument in opposition to the Petition.  The fact that DDOL failed to make the argument until now negates any

5

reasonable likelihood that the Third Circuit would even entertain the argument on appeal. The Third Circuit will review arguments made for the first time on appeal only "if there are extraordinary or exceptional circumstances counseling [it] to do so." *United States v. Sok*, 115 F.4th 251, 264 (3d Cir. 2024). No such circumstances exist here.

Even if the Third Circuit were to entertain the argument on appeal, there is no reasonable likelihood that it would find that the field preemption principles cited now by DDOL apply here, let alone that those principles call into question my decision to grant the Petition. I did not hold (and the Government did not argue) that *federal UC law* occupies the field and preempts the Delaware UC confidentiality laws that DDOL cites. Rather, I held that "[t]o the extent DDOL argues that a Delaware statute or regulation prohibits compliance with the subpoena, the state statute or regulation is preempted by [8 U.S.C.] § 1225(d)(4)(A) and [8 C.F.R.] § 287.4." D.I. 35 at 20 (citation omitted).

Section 1225(d)(4)(A) and § 287.4 are *federal immigration laws*. My holding was based on conflict preemption, not field preemption: To the extent a Delaware UC statute or regulation prohibits compliance with a subpoena issued pursuant to federal immigration law, that statute or regulation *conflicts with* and therefore is preempted by federal immigration law. "[C]onflict pre-emption is different [from other types of preemption] in that it turns on the identification of

6

'actual conflict[.]'" *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (citation omitted). "[S]tate laws are preempted when they conflict with federal law." *Arizona v. United States*, 567 U.S. 387, 399 (2012). And "state law is naturally preempted" "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (brackets, internal quotation marks, and citation omitted). That is why I held that "[t]o the extent DDOL argues that a Delaware statute or regulation *prohibits compliance* with the subpoena, the state statute or regulation is preempted by § 1225(d)(4)(A) and § 287.4." D.I. 35 at 20 (emphasis added) (citation omitted). As I explained in the Memorandum Opinion: "Congress granted immigration officers broad power to 'require by subpoena' testimony or the production of documents 'concerning any matter which is material and relevant to the enforcement of [the Immigration and Nationality Act (the INA)] and the administration of [DHS].'" D.I. 35 at 22 (second alteration in the original) (quoting § 1225(d)(4)(A)); *see also United States v. Minker*, 350 U.S. 179, 185–86 (1956) (explaining that the language in the provision now codified in § 1225(d)(4)(A) counsels against a "narrow[] reading"); *United States v. Brooks*, 841 F. App'x 346, 351 (3d Cir. 2020) ("[Section] 1225 . . . give[s] the Attorney General [and] immigration officers . . . broad powers to investigate violations of

7

immigration laws . . . .").  Thus, insofar as DDOL now argues that Congress did not intend to occupy the field of UC confidentiality law, that argument is of no moment in light of my holding that Delaware law is preempted to the extent it *conflicts* with federal immigration law.

DDOL did assert in its opposition to the Petition that Part 603 invited states to adopt UC confidentiality protections beyond the minimum protections afforded by federal law.  D.I. 24 at 7, 28.  But it made these assertions in the context of a broader argument that Part 603 conditions the disclosure of UC information in response to a subpoena on state-law authorization and noninterference with the efficient administration of the state UC system.  *See* D.I. 24 at 7–9, 24–28.  I expressly rejected that argument in the Memorandum Opinion.  *See* D.I. 35 at 19 ("Thus, disclosure of confidential UC information in response to an official subpoena or court order is *not* conditioned on state-law authorization or noninterference with the efficient administration of the state UC system.") (emphasis in the original).  Moreover, as I explained in the Memorandum Opinion:

> [T]he relevant question is not whether *Part 603* requires disclosure.  The relevant question here is whether *a subpoena lawfully issued pursuant to § 1225(d)(4)(A) and § 287.4* requires disclosure.  The answer to that question is clearly yes.  And § 603.5(h) makes it equally clear that the confidentiality requirements of Part 603 do not override or impede that subpoena power.  These are not close calls.

8

D.I. 35 at 20 (emphasis in the original) (footnote omitted). Thus, I addressed, and rejected, the argument that any permission Part 603 gives states to adopt UC confidentiality protections beyond the minimum protections afforded by federal law can provide a basis for a state to refuse to comply with a federal subpoena.

In its reply brief filed in support of its motion to stay, DDOL argues that Part 603, and specifically § 603.4(c), "mandates" states to pass stricter UC confidentiality laws like the Delaware statute and regulation DDOL relies on— such that the issue is really a conflict between a federal statute and a federal regulation. *See* D.I. 41 at 2. Putting aside the fact that DDOL did not raise the argument in its opposition to the Petition or even in its motion to stay, this argument, too, is baseless.

DDOL cites in support of the argument the commentary issued by USDOL alongside Part 603. *See* D.I. 41 at 3. The commentary reads in relevant part:

> [USDOL] appreciates that States have valid reasons for maintaining UC confidentiality laws that are stricter than those required by the rule. On balance, we believe that the rule will serve to enhance confidentiality requirements by making disclosure subject to the minimum requirements of the rule, while *permitting* States to provide additional protections.

Federal-State Unemployment Compensation Program (UC); Confidentiality and Disclosure of State UC Information, 71 Fed. Reg. 56830, 56831 (Sept. 27, 2006) (codified at 20 C.F.R. pt. 603) (emphasis added). That the federal regulation

9

*permits* stricter state laws does not mean that Part 603 "mandates" the Delaware statute and regulation at issue. In the absence of a *requirement*, there is no conflict between Part 603 and the INA. In fact, all § 603.4(c) *requires* is that state law "contain provisions that are interpreted and applied *consistently* with the interpretation in paragraph (b) of this section and with this subpart." § 603.4(c) (emphasis added). Paragraph (b) of § 603.4 in turn provides that "[t]he [U.S.] Department of Labor interprets Section 303(a)(1), [of the Social Security Act], to mean that 'methods of administration' that are reasonably calculated to insure the full payment of UC when due must include provision[s] for maintaining the confidentiality of . . . UC information . . . *except as provided in this part*." § 603.4(b) (emphasis added). And, as I explained in the Memorandum Opinion, the relevant subpart of Part 603 explicitly provides for "[d]isclosure of confidential UC information in response to a court order or to an official with subpoena authority." *See* § 603.5(h).

In any event, even if I were wrong in my interpretation of § 603.5(h) and even if Part 603 did require states to enact stricter confidentiality laws, Part 603, a federal regulation, could not override § 1225(d)(4)(A), a federal statute. "[A] regulation does not trump an otherwise applicable statute unless the regulation's enabling statute so provides." *United States v. Maes*, 546 F.3d 1066, 1068 (9th Cir. 2008); *see also United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983)

10

("Where an administrative regulation conflicts with a statute, the statute controls."); *United States v. Denardi*, 892 F.2d 269, 276 (3d Cir. 1989) (Becker, J., concurring in part and dissenting in part) ("A court must apply a statute passed by Congress itself as against an inconsistent regulation promulgated by a body to which Congress has delegated rulemaking power."). DDOL has never argued that the Social Security Act—or any other federal labor statute, for that matter—contains a provision that purports to trump the INA.

2.

DDOL argues that "[t]here is also a substantial likelihood that [it] will prevail on its argument that Delaware law is not preempted because the government has available to it alternative means to obtain the information it seeks that would not raise concerns under the Supremacy Clause." D.I. 38 ¶ 9. Here again, DDOL did not make this argument in its opposition to the Petition; and thus there is no reasonable chance that the Third Circuit would even entertain the argument on appeal. *See Sok*, 115 F.4th at 264; *see also Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994) ("This court has consistently held that it will not consider issues that are raised for the first time on appeal."). Moreover, DDOL cites no authority for the proposition that the availability of alternative means for the Government to obtain information precludes the Government from using mechanisms that might override state law. The only case

11

DDOL cites in support of this argument—*Ford Motor Co.*—is a field preemption case. *See* D.I. 38 ¶ 9 (citing *Ford Motor Co.*, 874 F.2d at 936). And, as noted above, there is no reasonable likelihood that the Third Circuit would find that field preemption principles apply here, let alone that those principles call into question my decision to grant the Petition.

B.

DDOL says it will suffer two irreparable harms absent a stay. It first argues, as it did in opposition to the Petition, that forcing it to comply with the challenged subpoena will impede the administration of Delaware's unemployment insurance system by putting the "financial viability" of the system "at risk." D.I. 41 at 8. I explained in the Memorandum Opinion the many reasons why this argument fails and noted that DDOL had not adduced any evidence other than the conclusory and unsubstantiated averments of DDOL's Secretary to support the argument. D.I. 35 at 13–17. It is not surprising that DDOL did not cite then and still has not cited any competent evidence that supports the argument. As I said in the Memorandum Opinion, the assertion that to prevent the Government from obtaining wage reports with lawful subpoenas to assist in the enforcement of the country's immigration laws, Delaware employers would refuse *en masse* to pay their unemployment taxes in violation of federal and state law and subject themselves to potential fines and even incarceration such that the solvency of Delaware's UC system would be at

12

risk "does not pass the straight-face test." D.I. 35 at 17. The argument is preposterous. It would be charitable to call the alleged risk of insolvency of Delaware's UC system a speculative, remote, or even possible harm. DDOL's argument that the potential insolvency of Delaware's UC system is an actual and imminent harm that will result if it is compelled to produce thirty wage reports to DHS is frivolous.

DDOL also argues that it will suffer irreparable harm absent a stay because "[o]nce the information that is sought has been provided to [the Government], there would be no remedy that could be provided through an appeal." D.I. 38 ¶ 10. The loss of an appellate right alone, however, "does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). And, in any event, DDOL's compliance with my Order enforcing the subpoena does not moot an appeal from that Order because the Third Circuit will "have [the] power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies [of the subpoenaed wage reports] it may have in its possession." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992).

DDOL has, in short, made no showing that it will suffer any irreparable harm in the absence of a stay.

13

## III.

Because DDOL has failed to make the requisite showings of a reasonable chance of success on the merits and a likelihood of irreparable harm absent a stay, DDOL's request for a stay "should be denied without further analysis." *See In re Revel AC*, 802 F.3d at 571. I nonetheless think it prudent to address the third and fourth factors that may guide a court's exercise of discretion in resolving a motion to stay.

### A.

The third factor considers whether "issuance of the stay will substantially injure" the Government. *See Nken*, 556 U.S. at 434. This factor weighs in DDOL's favor. The Government has been waiting over a year for the documents covered by the subpoena, and it argues that its investigation "is being impaired by DDOL's continued refusal to provide the [documents]." D.I. 39 at 11 n.3. But the Government acquiesced in some of the delay by agreeing to a briefing schedule for the Petition that ultimately spanned three months. *See* D.I. 13; D.I. 20; D.I. 30. That acquiescence undermines its assertion that it will be substantially harmed by a stay.

### B.

The fourth factor—the so-called "public interest factor"—considers "how a stay decision has consequences beyond the immediate parties." *In re Revel AC,*

14

802 F.3d at 569 (internal quotation marks and citation omitted). Quoting *EEOC v. Trustees of the University of Pennsylvania*, 2026 WL 1134868 (E.D. Pa. Apr. 27, 2026), a decision recently issued by Judge Pappert of the Eastern District of Pennsylvania, DDOL argues that the public interest factor favors a stay because "a stay will allow the Third Circuit Court of Appeals to address in an orderly manner a matter of great public interest." D.I. 41 at 2. In *Trustees of the University of Pennsylvania*, Judge Pappert granted a stay pending the appeal of an order that enforced an EEOC subpoena served on the University of Pennsylvania (Penn) in connection with an investigation into a charge that Penn subjected Jewish employees to a hostile work environment. 2026 WL 1134868, at *1. Judge Pappert granted Penn's request for a stay in part based on his conclusion that the public interest in that case favored a stay. *Id.* at *5. In reaching that conclusion, he agreed with the EEOC that "the public has an interest in the EEOC investigating a valid charge of discrimination," but he determined that under the circumstances before him that interest was outweighed by the public interest "in the orderly resolution of th[e] case through the ordinary appellate process." *Id.* (Judge Pappert also granted the stay in part because the second factor—irreparable harm—"tilt[ed] in Penn's favor." *Id.* Significantly, and unlike in this case, Penn challenged the subpoena on First Amendment grounds. *See id.* at *4–5; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment

15

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024) ("[W]e presume that First Amendment harms are irreparable."). There are no First Amendment rights alleged to be at issue in this case.)

I agree that the public has an interest in the orderly resolution of a case through the ordinary appellate process. But "[t]he propriety of [a stay's] issue is dependent upon the circumstances of the particular case," *Nken*, 556 U.S. at 433 (first alteration in the original), and under the particular circumstances of this case, the public interest in an orderly appellate process is outweighed by three other important public interests. The first is the public interest in DHS conducting its lawful investigation into the employment of unauthorized aliens. The second is the public interest in ensuring that lawyers who represent the government—be it federal or state—adhere to "higher standards than private lawyers," fulfill their "responsibility to seek justice," and thus "refrain from continuing litigation that is obviously pointless, that could easily be resolved, and that wastes Court time and taxpayer money." *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47 (D.C. Cir. 1992); *see also DaCosta v. City of New York*, 296 F. Supp. 3d 569, 600 (E.D.N.Y. 2017) ("The rationale underlying the prosecutor's obligation to do justice—her representation 'not of an ordinary party. . . but of a sovereignty whose

16

obligation to govern impartially is as compelling as its obligation to govern at all'—applies equally to attorneys who represent the government in civil disputes.") (omission in the original) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). The third is the public interest in maintaining public confidence that the judiciary is independent and apolitical. *See Bush v. Gore*, 531 U.S. 98, 157–58 (2000) (Breyer, J., dissenting) (describing "the public's confidence in the Court itself" as "a public treasure" that "is a vitally necessary ingredient of any successful effort to protect basic liberty and, indeed, the rule of law itself"); *Wolfson v. Concannon*, 750 F.3d 1145, 1164 (9th Cir. 2014) (Berzon, J., concurring) ("Maintaining public trust in the judiciary as an institution driven by legal principles rather than political concerns is a structural imperative. The rule of law depends upon it."), *rev'd en banc on other grounds*, 811 F.3d 1176 (9th Cir. 2016).

With respect to the first public interest, DDOL does not dispute that DHS's investigation into the employment of unauthorized aliens is lawful. 4.1.26 Hr'g Tr. (docketed as D.I. 33) 51:2–14; *see also* 4.1 Tr. 47:4–15, 56:18–22, 63:21–24. Nor could it. As I explained above and in the Memorandum Opinion, DHS "has the authority under § 1225(d)(4)(A) and § 287.4 to issue subpoenas for documents 'concerning *any* matter which is material and relevant to the enforcement of [the

17

INA].'"  D.I. 35 at 19 (emphasis and alteration in the original) (quoting

§ 1225(d)(4)(A)).

*Contrary* to the second public interest, DDOL has advanced and continues to

advance in this litigation arguments devoid of even colorable merit.  As discussed

above, DDOL has made in support of its motion for a stay implausible arguments

about field preemption that it had not made in opposition to the Government's

Petition.  And although DDOL argued in its motion that Part 603 "invited" stricter

state UC confidentiality laws, D.I. 38 ¶¶ 6–7, it changed course in its reply brief

and made the objectively baseless argument that Part 603 "mandate[d]" such laws,

D.I. 41 at 2.  At no point in either the motion or its reply brief did DDOL ever

engage with the central holding of the Memorandum Opinion—namely, that DHS

lawfully issued its subpoena pursuant to federal immigration laws and that to the

extent any Delaware law conflicts with those immigration laws, Delaware law is

preempted by federal immigration law under the Supremacy Clause.

DDOL similarly made implausible and misleading legal arguments in its

opposition to the Petition.  As it argued with respect to irreparable harm here,

DDOL argued in its opposition to the Petition that the subpoena was unreasonably

burdensome because its production of the thirty wage reports covered by the

subpoena would threaten the financial viability of Delaware's UC system.  *See*

D.I. 24 at 22–26, 28, 30.  As I have discussed here and in the Memorandum

18

Opinion, that argument is preposterous. DDOL also dedicated significant portions of its briefing in opposition to the Petition to the political argument that DHS issued the subpoena for "an improper purpose" described by DDOL as "an intense agenda of immigration enforcement." D.I. 24 at 2, 31–32; *see also* D.I. 18 at 4 & n.3 (making political arguments); D.I. 14 at 10 n.1 (same). I noted in the Memorandum Opinion that "[i]t would be wholly inappropriate for me to consider this line of argument," and I "decline[d] to do so." D.I. 35 at 22; *see also Dennis v. United States*, 341 U.S. 494, 525 (1951) (Frankfurter, J., concurring in affirmance of the judgment) ("History teaches that the independence of the judiciary is jeopardized when courts become embroiled in the passions of the day and assume primary responsibility in choosing between competing political, economic and social pressures.").

Equally, if not more, troubling, was the argument DDOL made in opposition to the Petition that "[c]ompelling disclosure would also *violate federal . . . law*," and specifically violate Part 603. D.I. 24 at 3 (emphasis added) (citing § 603.5). I intentionally did not address this argument directly in the Memorandum Opinion because I did not want to embarrass DDOL's counsel, but because DDOL has advanced new and evolving (and meritless) arguments in its motion for a stay, more needs to be said.

19

DDOL spelled out this argument twice in its brief filed in opposition to the Petition. Specifically, on pages 8 and 9 of its opposition brief, DDOL wrote:

> Although there are no mandatory disclosure requirements to [DHS] under federal UC law, there are two relevant exceptions that allow disclosure to "public officials . . . in the performance of their official duties," 20 C.F.R. §603.5(e), and to "officials with subpoena power . . . specified in 20 C.F.R. §603.7." The exceptions require a state UC agency to evaluate the potential harm of disclosure: disclosure is permitted "*only if* authorized by State law and if such disclosure does not interfere with the efficient administration of State UC law." Consistent with federal law, Delaware UC law provides for the same permissive disclosure exceptions, provided such disclosure will not "impede the operation of, and is not inconsistent with the purpose of" the DDOL/UI and is "authorized in writing in individual cases by the Delaware Secretary of Labor."

D.I. 24 at 8–9 (emphasis and omissions in the original) (footnotes omitted). And on page 24, it wrote:

> There are two exceptions to confidentiality that are implicated, but neither permit disclosure in this case: disclosure to a "public official," 20 C.F.R. § 603.5(e), and disclosure to "officials with subpoena power," 20 C.F.R. § 603.7. Disclosure is permissive under those exceptions, provided it is consistent with ["]the efficient administration of State UC law." 20 C.F.R. § 603.5.

D.I. 24 at 24.

When DDOL's counsel made the same argument orally at a hearing on April 1, 2026, I pointed out (and counsel ultimately acknowledged during the hearing), that the argument is based on an incomplete—and, as a result,

20

misleading—quotation from § 603.5. *See* 4.1 Tr. 31:17–38:10. In point of fact, as I explained during the hearing, § 603.5 does not provide that disclosure of UC information to "officials with subpoena power" is permitted "only if authorized by State law and if such disclosure does not interfere with the efficient administration of State UC law." *See* 4.1 Tr. 32:22–33:22, 34:6–21. On the contrary, and as I held in the Memorandum Opinion, § 603.5 explicitly provides that disclosure of confidential UC information in response to a subpoena is permissible "*without such restrictions.*" D.I. 35 at 18–19 (emphasis in the original) (quoting § 603.5). And contrary to what DDOL represented in its briefing, § 603.5 does not state that "disclosure is permitted '*only if* authorized by State law and if such disclosure does not interfere with the efficient administration of State UC law.'" *See* D.I. 24 at 8 (additional emphasis added). Rather, § 603.5 states that "[d]isclosure of confidential UC information is permissible *under the exceptions in paragraphs (a) through (g) of this section only if* authorized by State law and if such disclosure does not interfere with the efficient administration of the State UC law." § 603.5 (emphasis added). Disclosure of confidential UC information in response to a subpoena, however, is permissible *under the exception in paragraph (h)* of § 603.5, *not* under paragraphs (a) through (g) of § 603.5. *See* § 603.5(h) ("Disclosure of confidential UC information in response to a court order or to an official with subpoena authority is permissible as specified in § 603.7(b).").

21

DDOL's deletion of the words "under the exceptions in paragraphs (a) through (g) of this section" from its quotation of § 603.5 was, to say the least, unfortunate. As I said to counsel at the hearing, "[i]t wasn't [counsel's] best day when [they] wrote the brief and when [they] read the regs." 4.1 Tr. 40:3–5.

To counsel's credit, six days after the hearing, they emailed to the Clerk of Court (copying the Government) a letter addressed to me that read:

> As the Court highlighted in the hearing on Wednesday, April 1, 2026, there was an error in [DDOL]'s brief in opposition to the United States' motion to enforce the administrative subpoena. D.I. 24. We apologize to the Court for the mistake. Our intent was not to mislead the Court nor misrepresent the federal regulations.

D.I. 42 at 1. Counsel offered in the email to docket (and thereby make public) the letter, but instead, I had the Clerk tell counsel in a reply email (copying the Government) that I "appreciate[d] the letter, and that there [wa]s no need to docket it." D.I. 43 at 1. It was based on counsel's letter, that I decided not to address directly DDOL's "error[oneous]" argument in the Memorandum Opinion. *See* D.I. 42 at 1. I inferred from counsel's letter not only that counsel was appropriately remorseful for making the baseless argument, but also that DDOL would not continue to advance baseless arguments. As evident from DDOL's pending motion, I was wrong, at least with respect to the latter inference (and for that reason have now docketed counsel's letter).

22

The baseless legal and inappropriate political arguments from DDOL's counsel, both of whom are Deputy Attorney Generals of the State of Delaware, implicate the third public interest. And the time has come for DDOL—a state agency—to end its reliance on those arguments and its attempt to draw this Court (and now apparently the Third Circuit) into a political debate about the policy merits of what DDOL calls "an intense agenda of immigration enforcement." *See* D.I. 24 at 32. That reliance and DDOL's injection of politics into these court proceedings have "consequences beyond the immediate parties." *See In re Revel AC*, 802 F.3d at 569. When state officials bring to the federal courts a political matter under the guise of meritless legal arguments, they undermine the public's confidence in the federal judiciary and the rule of law. As Justice Frankfurter once famously said: "It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law." *Colegrove v. Green*, 328 U.S. 549, 553–54 (1946) (opinion of Frankfurter, J.).

The public interests at stake here thus favor denial of DDOL's motion for a stay.

23

IV.

For the reasons discussed above, DDOL has not demonstrated that it has more than a negligible chance of succeeding in its appeal. Nor has it shown that it would suffer any irreparable harm absent a stay pending the appeal, let alone that it is more likely than not to suffer irreparable harm. That the Government is unlikely to be substantially harmed by a stay pending appeal does not overcome DDOL's failure to make these showings, especially since the public interests implicated by the particular circumstances of this case counsel against a stay. Accordingly, I will deny DDOL's motion for a stay pending its appeal.

The Court will issue an Order consistent with this Memorandum Opinion.